STATE of Missouri, ex rel. MISSOURI–NEBRASKA EXPRESS, INC.,
Relator,

v.

The Honorable Randall R. JACKSON, Judge of the Circuit Court of Buchanan County, Missouri, Division I, Respondent.

No. WD 48790.

Missouri Court of Appeals,
Western District.

April 5, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1994.

Application to Transfer Denied
June 21, 1994.

Stephen J. Briggs, St. Joseph, for relator.

Robert Edward Murphy, Kenneth E. Siemens, St. Joseph, for respondent.

Before HANNA, P.J., and FENNER and BRECKENRIDGE, JJ.

### ORIGINAL PROCEEDING
### IN PROHIBITION

HANNA, Presiding Judge.

This petition for writ of prohibition arises from a lawsuit filed by plaintiffs, Harold Bottorff, Inc., Bob Moore, Leo Bolin, and Don Nicholas, against the relator/defendant, Missouri–Nebraska Express, Inc., a subsidiary of MNX, Inc. Defendant Missouri–Nebraska Express, Inc., is engaged in the business of interstate trucking. It operates tractor-trailer units from its headquarters in St. Joseph, Missouri. Plaintiffs are individuals who leased tractor-trailer units to defendant.

There were two claims that plaintiffs made against defendant in the court below. Plaintiffs' first complaint was that defendant had failed to pay certain termination fees under the lease agreements. The second claim charged fraudulent misrepresentation. The plaintiffs' lawsuit also included a count for punitive damages. On the Saturday before trial, defendant faxed plaintiffs' attorney a copy of its financial statement showing defendant's net worth to be $459,642. At trial, the plaintiffs offered no evidence of defendant's net worth. The defendant offered the testimony of its Chief Financial Officer, Janet Pullen, who testified that the net worth was approximately $460,000. The jury returned a verdict in favor of plaintiffs, including a punitive damage award totaling $4.2 million. On defendant's post-judgment motion, the trial court remitted the punitive damages award to $350,000, taking into consideration

a number of factors, including the evidence of defendant's net worth.[1]

After the court remitted the punitive damage award, plaintiffs pursued evidence of defendant's net worth. Plaintiffs obtained a copy of an ICC report prepared by Ms. Pullen in which, the plaintiffs claim, defendant listed a net worth of $32 million for the period ending January 2, 1993. The plaintiffs then filed a motion to reconsider the order of remittitur, arguing that the net worth figure given by defendant at trial was fraudulent. A hearing was held at which time the trial court examined the ICC filing and determined that the $32 million net worth figure was a consolidated figure of the parent/holding company and not solely of defendant and overruled plaintiffs' motion. On the same day, April 26, both parties filed notices of appeal with this court, the defendant appealing the judgment entered on the jury verdict, and the plaintiffs appealing the order of remittitur. Those appeals are pending in this court.

On August 19, 1993, the plaintiffs filed a second motion with the trial court seeking relief from the order of remittitur pursuant to Rule 74.06(b), and requesting that the court reinstate the punitive damage award of $4.2 million. In that motion, the plaintiffs argued: (1) that defendant had fraudulently misrepresented its net worth to the court; and (2) that the defendant's recent settlement of a lawsuit for several million dollars (in defendant's favor) increased defendant's net worth, making the order of remittitur inequitable. Accompanying plaintiffs' motion were interrogatories and requests for production of documents seeking financial statements for defendant, the parent company, and each subsidiary owned by the parent.

The defendant filed a motion to dismiss, arguing that plaintiffs' 74.06(b) motion was improper. Oral argument on plaintiffs' motion was held in September 1993. During the proceedings, the court concluded that it retained jurisdiction over the case. The court then allowed defendant to file a motion to dismiss on other grounds.

On December 6, 1993, the trial court denied defendant's motion to dismiss and ordered defendant to respond to plaintiffs' pending discovery requests. On December 20, 1993, this court issued a preliminary writ of prohibition at the request of defendant, ordering the respondent to refrain from enforcing its order of discovery. The defendant now asks us to make the preliminary writ absolute and order that the trial court refrain from proceeding further on plaintiffs' Rule 74.06(b) motion. The trial court has not yet determined whether it will grant or deny plaintiffs' Rule 74.06 motion. The question before us is whether discovery should be permitted.

The relator advances a number of arguments why the writ of prohibition should be made absolute.[2] We make our ruling in prohibition permanent because the plaintiffs had the right and the opportunity to discover and litigate the net worth issue before and during the trial. A second and somewhat analogous reason for our decision is based on relator's argument that plaintiffs cannot state a prima facie case of fraud because there was no reliance by plaintiffs on the defendant's evidence or its statement of net worth.

■ Section 530.010, RSMo 1986, provides, "The remedy afforded by the writ of prohibition shall be granted to prevent usurpation of judicial power, and in all cases where the same is now applicable according to the principles of law." Its purpose is to restrain lower courts from acting outside of their authorized jurisdiction. *State ex rel. Allen v. Yeaman,* 440 S.W.2d 138, 145 (Mo. App.1969). It is an extraordinary remedy used to correct and to prevent exercise of extrajudicial power and is not intended as a

---

1. The other factors considered by the trial court were the degree of harm inflicted upon plaintiffs as a result of defendant's conduct, and the good relationship between the parties over the years. The court specifically decided the remittitur on the "totality of the circumstances" per § 510.-263.6, RSMo Supp.1993.

2. The parties devoted considerable effort on the question of the trial court's authority to proceed on a Rule 74.06 motion while a case is on appeal. We do not believe it necessary to address that issue under the circumstances of the case at bar as discussed herein.

substitute for error or appeal. *Knisley v. State*, 448 S.W.2d 890, 892 (Mo.1970).

■ There are pending before this court two separate actions: an appeal from the judgment below and this petition for writ of prohibition. Both actions address the same underlying issue of the remittitur. Rule 74.06 is not intended as an alternative to a timely appeal. *Anderson v. Anderson*, 850 S.W.2d 404, 406 (Mo.App.1993). As the *Anderson* court suggested, "the availability of relief by means of a timely appeal weighs against the availability of that relief by way of Rule 74.06, in that the movant's request in that case has less appeal to the conscience of the chancellor." *Id.* In this light we review the plaintiffs' claim.

Rule 74.06(b) delineates the procedure to set aside a judgment and states, in relevant part, as follows:

(b) *Excusable Neglect—Fraud—Irregular, Void, or Satisfied Judgment.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: ... (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party....

■ The basis of the plaintiffs' claim is fraud. It is necessary, as plaintiffs concede, to make a prima facie showing of fraud before discovery should be permitted. *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir.1976) (interpreting the similar federal Rule 60(b)). Our scrutiny of the fraud claim should be no different than in any other pleading of fraud. Failure to prove any element of the claim of fraud is fatal to the cause of action. *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988).

■ Some additional facts surrounding this case are as follows. At various times throughout the proceedings below the plaintiffs' counsel stated to the court that they did not pursue the issue of the defendant's net worth after it was introduced into evidence even though counsel knew that the figure was erroneous. Counsel steadfastly held to the belief before trial that the defendant's representation was grossly inaccurate and they "didn't buy [it] for a second." This, they explained, was why they "didn't get into it at trial." Also they stated that in their opinion, any attempt to cross examine defendant's witness on net worth would be unwise and an exercise in futility. Finally, counsel stated to the court during oral argument as follows:

> Bottom line, judge, is by the time we got to trial we simply felt like when Ms. Pullen said it was $460[,000] it was based on a two page sheet that we got faxed to us on Saturday before the trial was to begin, there wasn't a whole lot to discuss with Ms. Pullen. And we didn't believe the jury would believe the representation that she made anyway.

This is not a case in which the plaintiffs simply neglected to prove the defendant's net worth. The record before us makes it abundantly clear that the defendant's net worth was a relevant and viable issue in the case and that counsel was aware of the defendant's proposed testimony of $460,000 net worth. Plaintiffs made a rational, conscious decision not to contest the defendant's evidence of net worth. It was a strategic decision that succeeded with the jury but went sour when the court, in line with its responsibility, ruled the matter.[3]

To set aside a judgment for fraud, the court cannot grant a further hearing on matters which were or could have been brought before the court at the initial hearing. *Hockenberry v. Cooper County State Bank*, 338 Mo. 31, 42, 88 S.W.2d 1031, 1036 (1935); *see also Jones v. Arnold*, 359 Mo. 161, 168, 221 S.W.2d 187, 192 (1949); *Crowley v. Behle*, 131 S.W.2d 383, 386–87 (Mo.App.1939).

---

3. Plaintiffs argue that it is not necessary to prove net worth in order to sustain a punitive damage award. While the cases stand for that proposition, the case law also states that defendant's net worth is a relevant issue in deciding the amount of punitive damages. Therefore, it is a signifi-cant factor in the outcome of the amount of punitive damages whether by jury verdict or court review. In both cases, the jury or court may consider, among other factors, the defendant's net worth. The only testimony of net worth was the $460,000 figure.

*Crowley* was an action to set aside the judgment because of intrinsic fraud. (The defendant's judgment was argued to have been founded on perjured testimony.) Defendant obtained a judgment against the plaintiff for coal delivered to the plaintiff's premises. Plaintiff claimed that the property was sold by him six months before the coal was delivered and he had told the defendant this fact. Nevertheless, the defendant took a judgment against him. The circuit court sustained the defendant's demurrer because the petition to set aside failed to state facts sufficient to constitute a cause of action. The court held that "[t]he law is well settled that a court is not authorized to set aside a judgment founded on a fraudulent instrument or *even upon perjured testimony*, or for any other matter ... *which could have been presented at the trial* which resulted in the judgment attacked." *Crowley*, 131 S.W.2d at 386–87 (emphasis added) (*citing Fadler v. Gabbert*, 333 Mo. 851, 63 S.W.2d 121 (1933); *Crane v. Deacon*, 253 S.W. 1068 (Mo.1923)). The court went on to say that to set aside a judgment under such conditions "would be equivalent to giving plaintiff another chance to be heard upon questions which were adjudicated at the former trial, and such procedure is not permissible." *Id.* at 387. *See also Rogers v. Dent*, 292 Mo. 576, 585, 239 S.W. 1074, 1076 (1922); *Dixon v. Tate*, 810 S.W.2d 366, 368 (Mo.App.1991).

■ It is agreed that the fraud charged here is intrinsic fraud—that is fraud that is perjury as opposed to fraud in the procurement of the judgment. *See Winchell v. Gaskill*, 354 Mo. 593, 602, 190 S.W.2d 266, 271–72 (1945). Rule 74.06(b) permits the court to set aside a judgment founded on fraud and eliminates the distinction between intrinsic and extrinsic fraud for purposes of the rule. Missouri has a long line of cases dating back to *Payne v. O'Shea*, 84 Mo. 129 (1884), which refuse to set aside a judgment based on intrinsic fraud. Our Supreme Court, in *Nichols v. Stevens*, 123 Mo. 96, 25 S.W. 578, *aff'd en banc*, 123 Mo. 96, 27 S.W. 613 (1894),

*aff'd*, 157 U.S. 370, 15 S.Ct. 640, 39 L.Ed. 736 (1895), held that to avoid a judgment for fraud, the party must prove that the judgment was "concocted in fraud; that fraud was practiced in the very act of obtaining the judgment." *Id.* at 116, 25 S.W. at 583. The court distinguished it from "a judgment obtained on false evidence or a forged instrument on the trial." *Id.*

Relief is denied in these cases on the theory that if relief were granted on issues tried and passed on in the original action litigation would be interminable. *Winchell*, 354 Mo. at 602–03, 190 S.W.2d at 272. A trial is designed to ferret out the fabricated testimony which may occur. The fact finder is to pass on the conflicting testimony. This provides a sufficient level of reliability that justice will prevail. Having afforded the necessary devices that safeguard against fabricated testimony, we are not prepared to reopen the issue and allow the losing party a second opportunity to present additional evidence to the jury or argument to the court.

■ Equity, as it relates to a claim of fraud, will not permit a new trial unless it involves fraud that prevents a party from having a trial or from the full presentation of its case. *Id.* at 602, 190 S.W.2d at 272. That long-standing and common sense rule of law remains today. Irrespective of whether the fraud is identified as intrinsic or extrinsic, there can be no basis for setting aside a judgment unless one party prevented the other party, through fraud, "from fully exhibiting and trying his case." *Id.* at 603, 190 S.W.2d at 272 (*quoting* 31 Am.Jur. *Judgments*, § 655 (1940)). See also *Barker v. Friendly American, Inc.*, 606 S.W.2d 457 (Mo.App.1980), in which this court, commenting upon the "cogent public policy that litigation must end," stated: "On that principle, even perjury—unless accompanied by conduct of a suitor which prevented the appearance or meritorious defense of the other suitor—even perjury [sic] does not suffice to allow the litigant another opportunity to try the merits of the case." *Id.* at 460.[4]

---

4. See *E.F. Hutton & Co. v. Berns*, 757 F.2d 215 (8th Cir.1985), construing Fed.R.Civ.P. 60(b)(3), the federal counterpart to Rule 74.06(b), which provides relief from a judgment when intrinsic

fraud is alleged. The court held that in order for relief to be granted under Rule 60(b)(3) on the ground of fraud, the perjured testimony must have been such as prevented the moving party

Even if the defendant's testimony was perjured under the facts of this case, it did not prevent the plaintiffs from completing a full presentation of the defendant's net worth. *See Sugrue v. Janssen*, 713 S.W.2d 44, 45–46 (Mo.App.1986). The present contest before the trial court is no more than an attempt to re-examine a matter that was before the court in the underlying action. Plaintiffs decided to present no evidence on that issue and, even though an adverse result occurred, they must be bound by that decision. If the rule were otherwise there would be no case immune from attack. We should not interpret Rule 74.06 to provide easy access to relitigate matters when such a ruling would damage the public's confidence in the important policy of the finality of judgments. This is particularly so when the judgment has been reached on the merits rather than by default. To allow inquiry here would unsettle the balance between justice and finality that Rule 74.06 attempts to strike.

Finally, before post-judgment discovery may be allowed, the movant must state a prima facie claim of fraud in its motion with specificity to cause the court, if true, to set aside the judgment. The parties agree that in order for the plaintiffs to prevail on a Rule 74.06(b) motion for fraud, they are required to show the following elements: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity, or his ignorance of its truth; 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of the falsity of the representation; 7) the hearer's reliance on the representations being true; 8) his right to rely thereon; and 9) the hearer's consequent and proximately caused injury. *Heberer*, 744 S.W.2d at 443. The facts of this case do not, as a matter of law, state a prima facie claim of fraud.

Assuming, arguendo, that Ms. Pullen's testimony was fraudulent, the plaintiffs, in order to state a claim of fraud, must prove that they were ignorant of the statement's falsity and acted in reliance on the false statement. The record below does not support either proposition. Statements made by counsel made it clear that they did not believe that the defendant's estimate of net worth was accurate. When a party is aware of the inaccuracy of the statement, he cannot claim that he relied on the misrepresentation. *Mobley v. Copeland*, 828 S.W.2d 717, 726 (Mo.App.1992). There can be no fraud without reliance.

As the second part of their Rule 74.06(b) claim of fraud, the plaintiffs argue that defendant understated its net worth because it valued a judgment/settlement of a lawsuit at zero. The claim, without any substantiation, is that the defendant settled the case for "several million dollars." Apparently, defendant obtained a judgment for $6,400,000 in an unrelated lawsuit which was set aside by the trial court and a new trial granted to defendant's opponent. Rule 74.06 does not allow a party to engage in discovery on an unsubstantiated claim as alleged here.

The trial court having exceeded its jurisdiction by ordering discovery to continue, we make the writ of prohibition absolute and the trial court is ordered to desist from enforcing its orders of discovery and proceeding with the Rule 74.06 motion.

All concur.

from fully and fairly presenting his case. *Id.* at 217.