John L. BLACKSTOCK and Rhonda S. Blackstock, Appellants,

v.

Michael KOHN, et al., Respondents.

No. 81345.

Supreme Court of Missouri,
En Banc.

June 29, 1999.

Rehearing Denied Aug. 3, 1999.

Francis E. Pennington, III, Francis X. Neuner, Jr., St. Louis, for Appellants.

Richard Sher, Joseph F. Devereux, Jr., St. Louis, Steven H. Schwartz, John D. Briggs, St. Louis, for Respondents.

ANN K. COVINGTON, Judge.

John and Rhonda Blackstock appeal from judgment in favor of Jerry Jaycox and Harbor Consultants, Inc., and Michael Kohn and Joseph Mooney. After opinion of the Missouri Court of Appeals, Eastern District, this Court granted transfer. Affirmed.

## I.

During the late 1980s, John and Rhonda Blackstock purchased from Jerry Jaycox three "dockominiums" at the Harbor Point Yacht Club on the Mississippi River. Dockominiums are boat docks that are individually owned. The Blackstocks used one of the docks. Jaycox managed and maintained the other two, which were available for renting. The Blackstocks and Jaycox agreed that Jaycox eventually would sell two of the docks on the Blackstocks' behalf.

In September of 1993, near the end of the great flood of that year, Jaycox told the Blackstocks about potential federal tax benefits from the flood and invited them to attend a meeting with Michael Kohn, Jaycox's tax attorney. At the meeting, Kohn explained that the Flood Relief Act of 1993 allowed an owner of property damaged in the flood of 1993 to amend tax returns for previous years to claim a casualty loss deduction for damage to the property. After the meeting with Kohn, Jaycox proposed that the Blackstocks should purchase additional docks so as to take greater advantage of the tax benefits. According to Allan Hodgdon, John Blackstock's long-time friend who also attended the meeting, Jaycox proposed that he and Blackstock could agree to represent that they had entered into a verbal agreement prior to the flood through which Blackstock was to purchase the additional docks from Jaycox. The Blackstocks later agreed to purchase fourteen docks from Jaycox through Jaycox's company Harbor Consultants, Inc. The closing occurred in October of 1993.

Of the additional fourteen docks the Blackstocks purchased from Jaycox, Kohn owned four. He had purchased them from Jaycox early in 1993. Jaycox agreed to rent out and manage the docks for Kohn. Jaycox also promised either to resell the docks or to repurchase them from Kohn by the end of 1993.

The Blackstocks retained Kohn as their tax attorney in late September or early October of 1993. Joseph Mooney, Kohn's law partner, prepared the Blackstocks' amended tax returns in which the Blackstocks claimed casualty loss deductions on all seventeen docks.

The parties dispute certain facts. To claim a casualty loss, a taxpayer must either own the property when the casualty occurs or must have made a binding agreement to purchase the property prior to the casualty event. Kohn and Mooney claim that the Blackstocks informed them of an oral agreement between the Blackstocks and Jaycox to purchase the fourteen additional docks prior to the flood. The Blackstocks contend that there was no agreement with Jaycox to purchase docks prior to the flood and that they did not represent that fact to Kohn or Mooney. The Blackstocks further contend Kohn never informed them that, to qualify for the tax deduction, prior to the flood they must have owned the docks or have made a binding agreement to purchase them.

The parties also dispute certain facts regarding the Blackstocks' meeting with Kohn and Mooney in October of 1993. The Blackstocks claim that this meeting was brief and that there was no discussion regarding the tax returns or the dock transaction. Kohn and Mooney maintain otherwise; they testified that the meeting lasted for three hours and that they thoroughly explained the amended tax returns and the casualty loss calculation process to the Blackstocks. Kohn and Mooney further claim that they made it clear to the Blackstocks that to claim the loss they must either have owned the docks prior to the flood or have entered into a binding

agreement to purchase the docks prior to the flood.

In June 1995, the Internal Revenue Service (IRS) audited the Blackstocks. The Blackstocks' casualty loss deductions were ultimately disallowed, and the IRS assessed penalties against them in the amount of forty percent of their tax liability.

The Blackstocks sued Kohn, Mooney, Jaycox, and Harbor Consultants, Inc., for common law fraud, negligent misrepresentation, and conspiracy to commit fraud. The Blackstocks sued Kohn and Mooney on additional counts of professional negligence and breach of fiduciary duty. The Blackstocks ultimately stipulated to the dismissal of the negligent misrepresentation and conspiracy to commit fraud counts. The trial court granted summary judgment in favor of Jaycox and Harbor Consultants on the common law fraud count. The trial court directed a verdict in favor of Kohn and Mooney on the breach of fiduciary duty count. The jury returned verdicts in favor of Kohn· and Mooney on the professional negligence and common law fraud counts.

## II.

In the professional negligence count of their petition, the Blackstocks alleged that Kohn was negligent in failing to advise them that in order to claim a casualty loss the Blackstocks prior to the flood must either have owned the docks or have had a binding agreement to purchase the docks.

The trial court submitted to the jury Instruction No. 9:

> Your verdict must be for plaintiffs John and Rhonda Blackstock and against defendants Michael E. Kohn and Joseph W. Mooney if you believe:
>
> First, an attorney-client relationship existed between defendant Michael E. Kohn and plaintiffs John and Rhonda Blackstock, and

Second, defendant Michael E. Kohn:
Failed to advise John Blackstock
that he could not claim a casualty
loss on his income tax returns if he
did not own the property prior to
the casualty or have a binding obligation to purchase the property prior to the casualty, and

Third, defendant Michael E. Kohn
was thereby negligent, and

Fourth, as a direct result of defendant
Michael E. Kohn's negligence,
plaintiffs John and Rhonda Blackstock were damaged.

Unless you believe plaintiffs are not
entitled to recover by reason of Instruction No. 11

Defendants Michael E. Kohn and Joseph W. Mooney were partners in
the law firm of the Kohn Partnership. Defendant Michael E. Kohn
was acting on behalf of the partnership and within the scope of his
authority. Therefore, if you decide
for plaintiffs, your verdict must be
against both defendants.

The trial court also submitted Instruction No. 11:

Your verdict must be for Defendants
Michael Kohn and Joseph Mooney if you
believe:

First, Plaintiff John Blackstock represented to Defendants that Plaintiffs
had an agreement to purchase the
docks prior to the flood, and

Second, Plaintiffs were thereby negligent, and

Third, such negligence of Plaintiffs directly caused any damage Plaintiffs
may have sustained.

On appeal, the Blackstocks claim that
the trial court erred in submitting Instruction No. 11. They assert that Instruction
No. 11 is a contributory negligence instruction. The Blackstocks further contend that Missouri's adoption of compara-

tive fault, see *Gustafson v. Benda*, 661
S.W.2d 11, 15 (Mo. banc 1983), eliminated
contributory negligence as a defense in
professional negligence cases and that the
trial court should have submitted a comparative fault instruction.

■ The Blackstocks' contention is
without merit, resting upon the mistaken
assumption that Instruction No. 11 is a
contributory negligence instruction. It is
not. Although inartfully drafted and having potential to confuse,[1] Instruction No.
11 is more appropriately classified as an
affirmative converse instruction. In a negligence case, an affirmative converse instruction presents a hypothetical ultimate
issue which, if true, renders it impossible
for the jury to find the defendant negligent
as a matter of law. See *Hiers v. Lemley*,
834 S.W.2d 729, 734 (Mo. banc 1992). An
affirmative converse instruction begins
with the language, "Your verdict must be
for the defendant if you believe ..." and
requires independent evidence for support.
*Id.* Although not favored, an affirmative
converse instruction is appropriate where
the verdict director assumes as true or
omits a disputed ultimate issue. *Id.* at
735.

Instruction No. 11 substantially conforms to the description of an affirmative
converse instruction. See MAI 33.01
(1996). The verdict director on the professional negligence count, Instruction No. 9,
assumes as true that the Blackstocks did
not misinform Kohn and Mooney regarding the existence of an agreement to purchase the docks prior to the flood. Under
the Blackstocks' theory on this count and
on the evidence, however, if John Blackstock told Kohn and Mooney that he had
an oral agreement to purchase the docks
prior to the flood, then Kohn and Mooney
could not have been negligent as a matter
of law. Instruction No. 11, therefore,
presents a hypothetical ultimate issue

---

1. The Blackstocks do not contend on appeal
that the jury would have been confused by the instruction.

which, if true, would defeat the Blackstocks' claim.

The causation language contained in Instruction No. 11 also demonstrates that Instruction No. 11 is more appropriately characterized as an affirmative converse instruction. The instruction states that the jury must find for Kohn and Mooney if the jury finds that the Blackstocks' representation directly caused any damages the Blackstocks may have suffered. The Blackstocks allege that Kohn's negligence caused their damages. Kohn and Mooney, however, assert that the cause of the Blackstocks' alleged damages was the Blackstocks' representation to Kohn and Mooney that they had an agreement to purchase the docks prior to the flood when, in fact, the Blackstocks had not made any such agreement. If the Blackstocks misrepresented to Kohn and Mooney that there was an agreement prior to the flood to purchase the docks, then the misrepresentation is the cause of their alleged damages and they may not recover damages from Kohn and Mooney as a matter of law.[2]

■ Instruction No. 11 is supported by independent evidence. Kohn and Mooney testified at trial that the Blackstocks claimed that they had an oral agreement with Jaycox prior to the flood to purchase the boat docks. Allan Hodgdon, the Blackstocks' long-time friend who testified on behalf of the Blackstocks, corroborated the lawyers' testimony. Hodgdon testified that Jaycox proposed that he and Blackstock could agree to represent that they had entered into a verbal agreement prior to the flood to purchase the additional docks. Hodgdon also testified that Blackstock later said that he accepted Jaycox's proposal.

Further reflecting that Instruction No. 11 is more appropriately categorized as an affirmative converse instruction, Instruction No. 9 contains an affirmative defense tail that refers the jury directly from Instruction No. 9 to the affirmative converse, Instruction No. 11. *See* MAI 33.01. Instruction No. 9 instructs the jurors that their verdict must be for the plaintiffs ... "Unless you believe plaintiffs are not entitled to recover by reason of Instruction No. 11."

While Instruction No. 11 should not be regarded as a model affirmative converse instruction because it includes references to negligence, it serves in effect as an affirmative converse instruction and is supported by independent evidence.

Because the instruction submitted was not a contributory negligence instruction, this Court does not reach the issue of whether the trial court should have submitted a comparative fault instruction rather than a contributory negligence instruction.

## III.

■ The Blackstocks attack Instruction No. 11 on two additional grounds. They first contend that "a client has no duty to make legal determinations for

---

**2.** As distinguished from an affirmative converse instruction, a contributory negligence instruction presents facts that, if found by the jury to be true, constitute negligent conduct on the part of the plaintiff. If the jury then finds that the plaintiff's negligent act directly contributed to cause the plaintiff's injury, then the plaintiff cannot recover even if the jury finds the defendant negligent. *See e.g.,* MAI 32.07(B) (1996). A contributory negligence instruction generally reads:

> You must find **plaintiff contributorily negligent** if you believe:
> First, plaintiff (characterize the act of negligence ... ), and

Second, plaintiff was thereby negligent, and Third, such negligence of plaintiff **directly contributed** to cause his injury.
*Id.* (emphasis added).

In the present case, the Blackstocks' negligence is not at issue—it is not relevant. John Blackstock either did or did not represent to Kohn and Mooney that he had an oral agreement prior to the flood to purchase the docks. If Blackstock represented to Kohn and Mooney that he had an oral agreement prior to the flood to purchase the docks, then the Blackstocks' claim against Kohn and Mooney fails because the misrepresentation is the cause of the damage.

which he hired the lawyer." Because the Blackstocks failed to object on this ground at the instruction conference, this Court will not review the claim. *Emery v. Wal-Mart Stores, Inc.,* 976 S.W.2d 439, 445 (Mo. banc 1998); Rule 70.03. The Blackstocks also claim that Instruction No. 11 failed to set out the elements of negligent misrepresentation. The Blackstocks did not raise this claim before the court of appeals. This Court, therefore, may not review the claim. *Linzenni v. Hoffman,* 937 S.W.2d 723, 727 (Mo. banc 1997) (citing Rule 83.08).

## IV.

■ The Blackstocks assert that the trial court erred in refusing to submit to the jury their proposed verdict director, Instruction A, which included as a disjunctive paragraph an assertion that Kohn was negligent because he "advised John Blackstock to claim a casualty loss that was not supported by adequate proof of a decline in the value of the property...." Instead of giving Instruction A, the trial court submitted Instruction No. 9 to the jury. The Blackstocks claim that the trial court's refusal to submit Instruction A was prejudicially erroneous because the evidence supported its submission.

Even assuming that Instruction A was supported by the evidence, the Blackstocks fail to demonstrate how failure to submit the instruction could have materially affected the outcome of the case. Kohn's alleged negligence in advising Blackstock to claim a casualty loss that was not supported by adequate proof of a decline in value did not cause the Blackstocks' alleged damages. The Blackstocks did not qualify for the casualty loss if they prior to the flood did not own or have a binding agreement to purchase the docks. The Blackstocks' alleged damages resulted from their attempt to take a casualty loss for which they did not qualify. The value of the docks was irrelevant. The claim is without merit.

## V.

■ The Blackstocks contend that the trial court erred in denying their amended motion for relief from judgment because the judgment was procured on the basis of fraud, misrepresentation, and misconduct. It is undisputed that Kohn claimed a casualty loss on his 1992 federal income tax return for the four docks he owned prior to the flood. These four docks were included in the fourteen-dock package Jaycox sold to the Blackstocks. The Blackstocks contend that Kohn testified falsely at trial that he filed an amended 1992 federal income tax form after discovering that he was not entitled to claim a casualty loss deduction on his docks because the docks had been sold to the Blackstocks. The Blackstocks allege that Kohn's perjury constituted "fraud, misrepresentation, and/or egregious misconduct" sufficient to require that the Blackstocks be relieved from the judgment under Rule 74.06(b).

■ The record does not support the Blackstocks' point. There is no basis for setting aside a judgment for fraud under Rule 74.06(b) unless one party prevented the other party, through fraud, from fully trying the case. *State ex rel. Missouri-Nebraska Express, Inc. v. Jackson,* 876 S.W.2d 730, 733–34 (Mo.App.1994). When a party is aware, or through reasonable diligence should be aware, of the inaccuracy of a statement made by the other party, he cannot claim that he has relied on the misrepresentation. *Id.* at 735. The record demonstrates that the Blackstocks were aware of Kohn's allegedly perjurious statement concerning the amended tax returns and were able to question the truthfulness of Kohn's statements in cross-examination and in closing argument. The Blackstocks cannot claim, therefore, that they relied on Kohn's alleged misrepresentation.

■ The Blackstocks also contend that an IRS disclosure officer was present and prepared to testify that Kohn had not filed an amended 1992 tax return. In accor-

dance with IRS procedure, however, the disclosure officer would testify only if Kohn consented in open court to the officer's testimony. The Blackstocks contend that Kohn's refusal to permit the disclosure officer to testify amounted to procuring the judgment by fraud. The Blackstocks do not explain, however, how the disclosure officer's testimony would have changed the outcome of the case. Further, the Blackstocks did not call the disclosure officer to testify or make an offer of proof regarding her testimony, so there is no evidence as to what her testimony would have been. In addition, the Blackstocks cross-examined Kohn about his unwillingness to permit the officer to disclose confidential information. Finally, Kohn had a right to refuse to permit the disclosure officer to testify. Kohn's decision to invoke his right does not amount to fraud.

The trial court did not err in denying the Blackstocks amended motion for relief from judgment.

## VI.

The Blackstocks contend that the trial court erred in granting summary judgment in favor of Jaycox because the release upon which the summary judgment decision was based did not discharge the claims in the present lawsuit. Early in 1995, Jaycox, his wife, and his company, Harbor Consultants, Inc., filed suit against the Blackstocks seeking payments allegedly due to Jaycox resulting from the Blackstocks' purchase of fourteen docks in 1993. Jaycox and the Blackstocks settled. In his second amended motion to dismiss, or in the alternative, for summary judgment in the present case, Jaycox asserted that the settlement agreement contained a general release that covered the Blackstocks' claims in this case. The trial court agreed and granted the motion for summary judgment.

Executed releases are presumptively valid. *Andes v. Albano*, 853 S.W.2d 936, 940 (Mo. banc 1993). This presumption is founded on the policy of law that encourages freedom of contract and the peaceful settlement of disputes. *Id.* Language that is plain and unambiguous on its face will be given full effect within the context of the agreement. *Id.* at 941. A general release "disposes of the whole subject matter or cause of action involved." *Clayton Plaza Int'l Leasing Co., Inc. v. Sommer,* 817 S.W.2d 933, 936 (Mo.App.1991).

The settlement agreement between the Blackstocks and the Jaycoxes contains the following release:

> Likewise, the Blackstocks release and forever discharge the Jaycoxes and/or Harbor Consultants, Inc. *from any and all claims, causes of action or liability of any sort whatsoever for any sums due arising from the sale, transfer, ownership or use of the Docks or from any other transaction between the Blackstocks and the Jaycoxes and/or Harbor Consultants, Inc.* so that the Jaycoxes and/or Harbor Consultants, Inc. are free forever from any money claims by the Blackstocks.

(emphasis added). The emphasized language in the Blackstocks' settlement agreement is general in nature. *See Estate of Givens v. U.S. Nat'l Bank of Clayton,* 938 S.W.2d 679, 682 (Mo.App.1997); *Clark v. Booth,* 660 S.W.2d 316, 318 (Mo. App.1983); *Liberty v. J.A. Tobin Constr. Co., Inc.,* 512 S.W.2d 886, 890–91 (Mo.App. 1974). The emphasized language is plain. It demonstrates the parties' intent to dispose of the entire subject matter of the dock transaction. The release is a general release that discharged the Jaycoxes from any liability in the present lawsuit. The trial court did not err in granting summary judgment to Jaycox.

## VII.

The judgment of the trial court is affirmed.

All concur.