v.

**TRANS WORLD AIRLINES, INC., Appellant.**

No. WD 60107.

Missouri Court of Appeals, Western District.

March 26, 2002.

Rex R. Redhair, Kansas City, MO, for Appellant.

■

**CITY OF KANSAS CITY, Missouri, Appellant,**

v.

**SOUTHWEST TRACOR INC., et al., Respondent.**

No. WD 59983.

Missouri Court of Appeals, Western District.

March 26, 2002.

Kathy K. Adams, Kansas City, for Appellant.

Linda S. Tarpley, Overland Park, for respondent.

Before JAMES M. SMART, JR., Presiding Judge, HAROLD L. LOWENSTEIN, Judge, and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

The City of Kansas City ("the city") appeals from the trial court's judgment dismissing with prejudice its petition for delinquent taxes against Southwest Tracor, Inc., and Woolridge Corporation of Missouri, Inc., partners in RSKC Associates ("the corporation").

The parties submitted the case to the trial court based on the following stipulated facts. The corporation operated a business, the Radisson Suites Hotel, which is subject to the city's Earnings and Profits Tax ("profits tax") and Convention and Tourism Tax ("tourism tax"). The profits tax is a one-percent tax on a corporation's net profit that is earned as a result of business conducted in the city. Overdue taxes are subject to a five percent penalty per month, up to a maximum of twenty-five percent. In addition, the city is entitled to collect interest on past-due amounts in the amount of six percent annually for tax years 1993 and earlier, and twelve percent annually for tax years after 1993. The corporation failed to pay the profits tax for 1993 and 1994. At trial, the corporation owed $727.98 for 1993 and $860.56 for 1994.

The tourism tax is a one-and-three-fourths percent tax on gross receipts from retail food sales and a five-and-one-half-percent tax on sleeping rooms. Overdue tax is subject to a penalty of five percent, and the city is also entitled to collect interest. The corporation failed to pay the tourism tax for the periods ending December 31, 1994, January 31, 1995, and February 28, 1995. The amounts due at trial were $35,486.52, $35,398.90, and $35,214.92, respectively.

In addition to the outstanding tax, penalties and interest, the city charter provides that the city is entitled to ten percent of the delinquent tax as attorney fees, which amounts to $7,609.24 for this case. The parties stipulated that the city is also entitled to statutory post-judgment interest at the rate of nine-percent annually. Finally, the city may collect costs associated with the lawsuit, which at the time of trial were $70 for a special process server and $22 in court costs.

The parties also stipulated that on March 13, 1996, the city filed a lawsuit in Cass County, Missouri, to collect the unpaid taxes. The city failed to take action

on the case, and it was dismissed without prejudice. The stipulation does not state when the suit was dismissed.

The stipulation incorporates by reference a petition filed by the city on July 30, 1996, in an unrelated case, alleging that Southwest Tracor had breached a parking agreement with the city. Southwest Tracor had agreed in a contract dated July 1, 1994, to pay the city for parking tickets validated by the Radisson Suites Hotel. The hotel validated tickets used by hotel patrons and employees who used the Auditorium Plaza Garage. The garage is managed by the city's Convention and Entertainment Centers Department. Before trial, the city and Southwest Tracor negotiated a settlement. Southwest Tracor agreed to pay the city $7,000, and the city executed a release, incorporated in the stipulation by reference, which states in relevant part:

Full Release

KNOW ALL MEN BY THESE PRESENTS, that CITY OF KANSAS CITY, MISSOURI, upon the receipt of the sum of SEVEN THOUSAND AND NO/100 DOLLARS ($7,000), will forever discharge, SOUTHWEST TRACOR, INC., and its agents, servants, employees, partners, directors, officers, heirs, personal representatives, successors and assigns from any and all actions, liens and compensation arising out of any event, known or unknown, occurring prior to the date of this release, including but not limited to transactions between the parties which in any way relate to Case Case [sic] No. CV96–17000, pending in the Circuit Court of Jackson County, Missouri; and specifically, without restricting said release, from any and all actions, causes of action, claims, demands, damages, costs and expenses directly or indirectly related to the

transactions between the parties, in issue, or existing.

The terms hereof are contractual and not mere recitals and that they state the entire agreement between the parties.

The party executing this document on behalf of CITY OF KANSAS CITY, MISSOURI, and represents he/she is authorized to take this action on behalf of said party.

The release is dated April 1, 1997. It was signed by William LaMette, the then Acting Director of Convention and Entertainment Centers.

On April 15, 1999, the city again filed its suit against the corporation for delinquent taxes. The corporation argued in its answer that the petition was "barred by accord and satisfaction" because the "full release" that resulted from the parking contract dispute also released the corporation from paying the overdue taxes.

The parties stipulated to the facts and submitted trial briefs. On May 9, 2001, the trial court entered its Judgment of Dismissal, finding that the agreement was unambiguous and fully released "Southwest Tracor Inc. and its partners" from all actions prior to the date of the release, including the petition for delinquent taxes. The city brings this appeal.

 The trial court's decision in a case submitted on a stipulation of facts is considered to be a judgment on the merits. *King v. Jones*, 971 S.W.2d 916, 919 (Mo. App. W.D.1998). As a result, appellate review is proper under the standard set out in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Id.* "[W]e will affirm the trial court's judgment when substantial evidence supports it, it is not against the weight of the evidence, and the trial court correctly declares and applies the law." *Id.* When the parties stipulate to the facts, our review is limited to a determination of

whether the trial court reached the correct legal conclusions from the stipulated facts. *Petet v. State, Dept. of Soc. Servs., Div. of Family Servs.*, 32 S.W.3d 818, 822 (Mo. App. W.D.2000); *See also H.B.I. Constr., Inc. v. Graviett*, 903 S.W.2d 653, 654 (Mo. App. E.D.1995).

■ In its first point on appeal, the city argues that the trial court erred in dismissing its petition. The city contends that its charter does not permit the abatement or release from the duty to pay taxes and that the release could not have excused the corporation from this obligation.

The one-page Judgment of Dismissal shows that the court's judgment was based on the language in the release and does not indicate whether the trial judge considered the effect of the city charter on the release. The judgment states in relevant part:

> After reviewing the stipulation and the trial briefs, and being fully advised in the premises, the Court finds that the April 1, 1997 Full Release is not ambiguous and fully released Southwest Tracor Inc. and its partners from all actions prior to the date of the release which would include the subject matter of this cause of action.

■ In general, the presumption is that executed releases are valid. *Blackstock v. Kohn*, 994 S.W.2d 947, 954 (Mo. banc 1999). "A release is a contract requiring consideration and is governed by the same principles applicable to any other contractual agreement." *Sansone v. Moseley*, 912 S.W.2d 666, 670 (Mo.App. W.D.1995). As with any contract, the intent of the parties governs when interpreting a release. *Tuttle v. Muenks*, 21 S.W.3d 6, 9 (Mo.App. W.D.2000). "Where the language used in a release is plain and unambiguous, we will determine that intent based on the contract's language, and not based on parol [sic] or extrinsic evidence." *Id.* 9. These rules support " 'the policy of law that encourages freedom of contract and the peaceful settlement of disputes.' " *Baker–Smith Sheet Metal, Inc. v. Bldg. Erection Servs. Co.*, 49 S.W.3d 712, 715 (Mo.App. W.D.2001) (quoting *Blackstock v. Kohn*, 994 S.W.2d 947, 954 (Mo. banc 1999)).

■ As noted by the city, however, a municipality's freedom to enter contracts is constrained by § 432.070, RSMo 2000, which states in relevant part: "No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law." *Public Water Supply Dist. No. 16 v. City of Buckner*, 44 S.W.3d 860, 863 (Mo.App. W.D. 2001). The statute recognizes that municipal corporations represent the public and should be protected from the unauthorized actions of their agents. *State ex rel. State Highway Commission v. City of Washington*, 533 S.W.2d 555, 558 (Mo.1976) (quoting *Bride v. City of Slater*, 263 S.W.2d 22, 26 (Mo.1953)). The purpose of the statute is to provide protection for municipalities; not parties who seek to impose obligations upon government entities. *Public Water Supply Dist. No. 16*, 44 S.W.3d at 864. To that end, " '[a] court should unhesitatingly enforce compliance with all mandatory legal provisions designed to protect a municipal corporation and its inhabitants.' " *City of Washington*, 533 S.W.2d at 558.

■ The requirements of § 432.070 are " 'mandatory and not merely directory.' " *Software A.G. of N. Am., Inc. v. City of Columbia*, 903 S.W.2d 641, 643 (Mo.App. W.D.1995) (quoting *Fenton v. Executive Int'l Inn Inc.*, 740 S.W.2d 338, 340 (Mo.App. E.D.1987)). A party contracting with a municipality is charged with the knowledge of the requirements

set out in the statute. *Id.* As a result, "any contract entered into by a municipality beyond the scope of its power is void and not merely voidable." *Id.* " '[I]t is . . . ultra vires for a Missouri municipality to incur a liability in the nature of a contractual obligation . . . not within the scope of its corporate powers or one not expressly authorized by law.' " *Duckett Creek Sewer Dist. of St. Charles County v. Golden Triangle Dev. Corp.*, 32 S.W.3d 178, 183 (Mo. App. E.D.2000) (quoting *Donovan v. Kansas City*, 352 Mo. 430, 175 S.W.2d 874, 882 (banc 1943)).

In *Software A.G.*, this Court determined that a municipality could not be bound by an agreement that would have violated a city ordinance requiring re-bidding of contracts that were more than five years in duration. *Software A.G. of N. Am., Inc.*, 903 S.W.2d at 643–44. The software company had entered into a technical services contract with the city, and each year, the company would send the city an invoice for services to be rendered in the upcoming year. *Id.* at 642. The city had paid the annual invoices for five years, but did not pay the sixth invoice and did not notify the company that it intended to cancel the contract until seven months after payment was due. *Id.* We determined that the sixth invoice was simply an offer to extend the contract and that the city was not required to accept the offer. *Id.* at 644. Had the city accepted, however, the contract "would have been void and unenforceable" because such an agreement would have violated the city ordinance. *Id.*

In the case at bar, the city entered into an agreement with the corporation to settle a dispute involving a parking contract. The city does not contest that the agreement released the corporation from its liability under the parking contract. The

corporation argues that the "Full Release," incorporated in the settlement agreement, does much more, however, in that it releases the corporation from "any and all actions, liens and compensation arising out of any event, known or unknown, occurring prior to the date of this release." The trial court determined that this language unambiguously released the corporation from all actions prior to the date of the agreement, including the action for delinquent taxes. But the trial court apparently did not consider whether the city was authorized to enter into an agreement that released the corporation from its previously assessed tax obligations.

Article XII, § 391 of the Kansas City Charter provides:

> Abatement and reduction in valuation. No person or property shall be exempted or released from any burden imposed by or according to law. No general or special tax or assessment, or interest or penalty thereon, shall be remitted or abated, or the right to enforce payment thereon be released, except in correction of a clerical error. After the levy of any tax, neither the amount thereof nor the valuation of any property for the levy shall be reduced except only in the correction of clerical errors.

This provision prohibits the city from releasing a taxpayer from the duty to pay taxes, except when done to correct a clerical error. As noted *supra*, a city may not enter into a contract beyond the scope of its authority, and any such agreement is void. *Software A.G. of N. Am., Inc.*, 903 S.W.2d at 643. Consequently, the Release executed by the city as part of its settlement of the parking dispute does not relieve the corporation of its obligation to pay the previously incurred taxes, and to the extent it purports to, it is void and

unenforceable.[1] *Id.* at 644. Point I is granted.[2]

The trial court's judgment dismissing the city's petition with prejudice is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

All concur.

1. Section 2–201 of the Code of Ordinances of the City of Kansas City, Missouri, permits a taxpayer to pay taxes under protest and thereafter litigate the issue of liability as to those amounts paid under protest.

2. Since the judgment is reversed on Point I, we need not address the second point raised by the city on appeal.