**DUCKETT CREEK SEWER DISTRICT OF ST. CHARLES COUNTY, Missouri, Plaintiff/Appellant,**

v.

**GOLDEN TRIANGLE DEVELOPMENT CORPORATION, Defendant/Respondent.**

**No. ED 77404.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 21, 2000.

Jay A. Summerville, St. Louis, MO, for appellant.

Brian E. McGovern, Chesterfield, MO, for respondent.

AHRENS, Presiding Judge.

Duckett Creek Sewer District of St. Charles County, Missouri ("sewer district") appeals from a declaratory judgment in favor of Golden Triangle Development Corporation ("developer"). The trial court found that sewer district was required to enter into a sewer main extension contract and reimburse the developer the cost of constructing an off-site sewer line to serve developer's subdivision. We reverse.

Golden Triangle is the developer of a subdivision known as Cambridge Estates, which did not have a sewer main. To obtain planning approval from St. Charles County for the Cambridge Estates subdivision, developer needed to show that it could provide Cambridge Estates with sewer service. This would require an off-site sewer main across an adjacent subdivision known as Reddington Oaks. The developer knew when it purchased Cambridge Estates that a sewer main connection would have to go through Reddington Oaks. The developer of Reddington Oaks granted an easement to the developer of Cambridge Estates for the construction of a sewer line across Reddington Oaks.

Duckett Creek is a sewer district created under Missouri Law. Chapter 249 RSMo 1994. In 1992, sewer district adopted written Rules, Rates, and Regulations ("rules"), which set out the procedure for how developers may recoup the cost of constructing certain sewer main extensions through a sewer main extension contract which must be entered into by the developer and the sewer district. Article II, section 23 of the sewer district's rules defines a sewer main extension as "a sewer main constructed by a developer across property not owned by the developer (off-site) to service the developer's project and for which the District will grant a sewer main extension contract as provided in Article XIX." The rules require that the sewer contract be in writing and signed by both parties.

The developer knew the sewer district used sewer main extension contracts. Prior to this lawsuit, the developer had obtained recoupment for construction of other sewer mains pursuant to written sewer main extension contracts executed prior to the construction.

In August 1996, prior to the construction of the sewer line, the sewer district approved the developer's plans and proposed costs of $48,582.50. They entered into an escrow agreement in which the developer set aside funds sufficient to guarantee construction of the sewer line at the cost of $48,582.50.

In late 1996, the developers constructed a sewer line across Reddington Oaks subdivision. Actual construction costs for the sewer line were $76,443.73. No written sewer main extension contract was ever entered into by the developer and the sewer district to obtain recoupment for the sewer line across the adjacent subdivision.

On April 17, 1997, the developer orally requested recoupment and a sewer main extension contract and made a payment to the sewer district for tap-on fees at the rate of $200.00 per unit. The sewer district then informed the developers that it was not entitled to recoupment and that the tap-on fees were $400.00 per unit, not $200.00. Sewer district based its denial on what it claims was a "consistent" interpretation of its rules to deny requests for recoupment for construction of any sewer main extension across property already being developed by another developer or likely to be developed during the time of the applicant's own development. On February 9, 1998, the developer dedicated the sewer line to the sewer district but renewed its request for recoupment.

On August 10, 1998, the sewer district sought a declaratory judgment that the

developer was not entitled to a sewer main extension contract or recoupment under the sewer district's rules. The developer counterclaimed seeking a determination that it was entitled to the contract and recoupment.[1] The parties submitted the case to the court on a stipulation of facts. The trial court entered judgment in favor of developer, stating that developer was entitled to a sewer main extension contract for the off-site sewer. In addition, the trial court ruled that the developer was entitled to reimbursement of $200.00 per existing lateral tap into developer's Cambridge Estates off-site sewer and $200.00 for any future taps for a period of ten years from the date of execution of the sewer main extension contract. The sewer district filed this appeal.

In a court-tried case, the trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Since this case was tried on stipulation of facts, the only issue on appeal is whether the trial court drew the proper legal conclusions from the stipulated facts. *State Farm Mutual Auto. Ins. Co. v. Sommers*, 954 S.W.2d 18, 19 (Mo.App.1997).

In the sewer district's first point on appeal, it contends that the trial court erred in ordering it to execute a sewer main extension contract which would reimburse the developer. The sewer district argues the developer is barred as a matter of law by the statute of frauds dealing with Missouri public entities because section 432.070 RSMo 1994 [2] requires all contracts with a Missouri public body to be in writing and supported by future consideration.

---

1. The developer filed three counter-claims. Count I sought a determination that the sewer district must execute a sewer main extension contract with the developer. Count II sought recovery under breach of an oral sewer main extension contract. Count III sought recovery under equitable estoppel. Counts II and III were later dismissed by the developer without prejudice.

2. All other statutory references are to 1994 unless otherwise indicated.

■ As a sewer district, Duckett Creek is a "municipal corporation" under Missouri law, *State ex rel. Becker v. Wellston Sewer Dist. of St. Louis County*, 332 Mo. 547, 58 S.W.2d 988, 991 (1933), and is therefore subject to the section 432.070 statute of frauds. Section 432.070 provides:

> No county, city, town ... municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such a contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto....

■ In Missouri the law is clear that all contracts with a municipal corporation must be in writing and all persons dealing with a municipal corporation are charged with notice of that law. *Vochatzer v. Public Water Supply Dist. No. 1 of Lafayette County*, 637 S.W.2d 418, 420 (Mo.App. 1982). Moreover, "[a]ny contract made in violation of [this] requirement is void." *Id.*

It is undisputed that developer failed to comply with the portion of the sewer district's rules, which specifically required the execution of a written sewer main extension contract. Notwithstanding the lack of a written contract, developer contends that it was entitled to a sewer main extension contract because it complied with all the conditions and requirements for such a contract set out in the sewer district's rules. Alternatively, developer contends the sewer main extension contract was a government subsidy and benefit program to which it was entitled without a written contract. We reject developer's contentions.

■ The failure to comply with the requirement of a writing mandated by the section 432.070 statute of frauds bars a developer from recoupment of sewer con-

struction costs, even though reimbursement of those costs was authorized by ordinance. *Allen v. City of Fredericktown*, 591 S.W.2d 723 (Mo.App.1979). The developers in *Allen* sought recoupment from the city for the costs of construction of water and sewer lines within a subdivision under a municipal ordinance which provided for reimbursement by the city to the developers. *Id.* at 724. The trial court ruled in favor of the city and the developers appealed. This court affirmed the judgment "on the ground that there was no written contract." *Id.* at 723.

The developers argued that "the existence of [the ordinance] providing for reimbursement of water and sewer line expenses, creates a unilateral or executory contract which needs only some action or performance by [developers] to complete the contract with the ordinance serving as the written document." *Id.* at 725. This court stated that it is a fundamental precept that a municipality must reduce its contract to writing under the mandate of section 432.070. *Id.* Furthermore, the ordinance "cannot serve as any kind of paradigm for a contract. It is, at most, the authority which could lead to the preparation of a written contract for the construction and reimbursement provisions for sewer and water lines in a subdivision." *Id.* The ordinance cannot constitute the written contract required by section 432.070. *Id.*

■ Here, as in the case of a municipal ordinance with a provision for reimbursement, the sewer district adopted rules setting out the procedure for applying for a sewer main extension contract. These rules, like the ordinance in *Allen*, do not constitute a written contract. Moreover, the rules specifically required a separate sewer main extension contract. Article XIX, Section II(A)(3) provides that "[a]fter approval by the District of cost estimates, a Sanitary Sewer Main extension Contract will be executed...." The sewer district's rules require a written contract and section 432.070 requires a

written contract. "[T]he law will not make that valid without a writing which the law requires to be in writing; [for] ... the statute prescribed the manner for its exercise and it could not be exercised otherwise." *Donovan v. Kansas City*, 352 Mo. 430, 175 S.W.2d 874, 881 (1943). We conclude that sewer district's rules did not constitute a contract to satisfy the statute of frauds, section 432.070. For the same reasons that the rules do not constitute a unilateral contract, we conclude that they also do not constitute a government subsidy or benefit which create an entitlement for developer. This is particularly so where the rules specifically required the execution of a written contract. Since the developer never entered into a written contract with the sewer district, it may not be reimbursed.

■ In addition to the lack of a written contract, the developer's request for recoupment and a contract after construction must also fail because of the lack of any future consideration. Section 432.070 requires that contracts can only be for "consideration wholly to be performed or executed subsequent to the making of the contract." Section 432.070. Here, however, the developers constructed the sewer main extension prior to requesting a written contract. The sewer line was completed in 1996. On April 17, 1997, when the developer requested a sewer main extension contract from the district, the developer had nothing to offer for consideration. If the sewer district had entered into a contract after the construction and dedication, it would be void and unenforceable for lack of consideration "wholly to be performed or executed subsequent to the making of the contract." Section 432.070.

On the issue of consideration, developer asserts that at the time the cost estimates were approved, and before construction of the sewer line, sewer district was required to issue the sewer main extension contract. Accordingly, developer contends there was present consideration at that time to satisfy the statute of frauds. There is no evidence in the record that developer attempted to obtain a written contract with sewer district prior to beginning construction. Although developer had previously entered into written sewer main extension contracts prior to construction, developer instead chose to proceed with construction in this case without the benefit of a written contract. Under these circumstances, developer's argument that consideration may have existed prior to the construction is of no benefit to developer.

■ Additionally, developer argues that consideration exists because sewer district continues to receive benefits following construction of the sewer line, through expansion of sewer district's facilities as a result of the extension and receipt of monthly service fees for connections. We disagree. "The fact a municipality has received the benefit of a performance by the other party does not make the municipality liable either on the theory of a ratification, estoppel or implied contract." *Allen*, 591 S.W.2d at 725 (quoting *Mo. Int'l Investigators, Inc. v. City of Pacific*, 545 S.W.2d 684 (Mo.App.1976); *Kansas City v. Rathford*, 353 Mo. 1130, 186 S.W.2d 570, 574 (1945)). Under section 432.070, "it is as much ultra vires for a Missouri municipality to incur a liability in the nature of a contractual obligation in the absence of a writing as to incur a liability not within the scope of its corporate powers or one not expressly authorized by law." *Donovan*, 175 S.W.2d at 882.

■ Developer also contends that the sewer district should be estopped from arguing the lack of a sewer main extension contract because it entered into sewer main extension contracts with other developers after the construction of sewer lines on five other occasions. Developer was not involved in any of these projects. Developer cites no authority in support of this assertion, and we can find none. As noted previously, in the absence of a written contract, a municipal body cannot be-

come liable based on estoppel. *Allen,* 591 S.W.2d at 725.

We hold that the developer's claim for a contract and recoupment violates section 432.070 which requires a written contract supported by future consideration. Since sewer district's point one is dispositive, we need not address point two.

The judgment of the trial court is reversed.

CRANDALL, J., concurs.

JAMES R. DOWD, J., concurs.