**GILL CONSTRUCTION, INC.,**
Appellant–Respondent,

v.

**18TH & VINE AUTHORITY,**
Respondent–Appellant,

**City of Kansas City, Missouri,**
Respondent.

Nos. WD 62073, WD 62076.

Missouri Court of Appeals,
Western District.

Dec. 21, 2004.

As Modified Feb. 1, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2005.

Application for Transfer Denied
April 5, 2005.

Roy Bash, William E. Quirk, and Susan C. Hascall, Kansas City, MO, for appellant-respondent, Gill Construction Co.

Lana K. Torczon and Heather A. Brown, Assistant City Attorneys, Kansas City, MO, for respondent-appellant, 18th & Vine Authority.

Galen Beaufort, City Attorney, Kansas City, MO, for respondent, City of Kansas City, Missouri.

Before BRECKENRIDGE, P.J., and SMART and HOWARD, JJ.

PER CURIAM.

Appellant–Respondent Gill Construction Company ("Gill") appeals from the Circuit Court of Jackson County's dismissal of Gill's breach of contract action against Respondent City of Kansas City ("the City"). Gill argues two points on appeal. Respondent–Appellant 18th and Vine Authority ("the Authority") also appeals from the circuit court's judgment for Gill in its breach of contract action against the Authority. The Authority argues fourteen points on appeal. For the reasons set forth below, we affirm the judgment of the circuit court.

## Background

Gill was a Missouri corporation that was dissolved on August 2, 2001. The City is a municipal corporation. The Authority is a Missouri not-for-profit corporation in good standing that is responsible for the construction and renovation of the American Jazz Museum and the Gem Theater in the historic 18th and Vine District of Kansas City, Missouri. The 18th and Vine District was formerly the center of Kansas City's African–American culture, entertainment, and business. The 18th and Vine District deteriorated, the buildings fell into disrepair, and most of the businesses either closed or moved. The City created the Authority in order to revitalize the 18th and Vine District and oversee the redevelopment of the district.

In December 1993, the City passed Ordinance No. 931426 that authorized the creation of the Authority and authorized and approved a contract between the City and the Authority for management of the 18th and Vine District redevelopment ("the Project"). The ordinance provided that the Authority would be managed by a five-person board, including the Mayor of the City and four others appointed by the Mayor and approved by the City Council.

Pursuant to the ordinance, the City and the Authority entered into a Management Agreement that governed the construction and management of the Project. The Management Agreement provided that the City would finance the Project out of its appropriations and either pay the Authority or pay the Authority's approved contractor directly.

The Authority and Gill entered into three contracts in conjunction with the project. The City authorized payment for change orders and additional work on contracts entered into by the Authority by passing numerous ordinances related to the creation and funding of the project. The scope of the work to be performed on the Project by Gill expanded with each

contract. Gill was also asked to perform work on the Project that was beyond the scope of the agreements. The parties executed change orders for this additional work. The additional work significantly increased Gill's costs, but the Authority refused to pay for some of the work that Gill had completed on the Project.

Gill brought suit against the Authority and the City for breach of contract and for violations of the Missouri Prompt Payment Act, Section 34.057.[1] Gill alleged in its breach of contract claim that the extra work performed by Gill increased the project cost by sixty-eight percent. Gill also alleged that this extra work materially altered the nature of the project and constituted a cardinal change to the agreements. Gill alleged that it had performed all conditions precedent to the Authority's and the City's obligations to pay for the work Gill performed, but the Authority did not fully compensate Gill for its extra work. Gill also alleged that the City was liable because it is the controlling entity and alter ego of the Authority.

Gill alleged in its Prompt Payment Act claim that the contracts were public works contracts between Gill and the Authority and City, that the Authority and the City did not make timely payments as required by the Act, and that the Authority and City improperly withheld retention contract payments from Gill after substantial completion. Gill also alleged that the failure to make final payments was not in good faith or for reasonable cause, so Gill was entitled to recover reasonable attorney's fees under the Act.

The Authority and the City both filed motions to dismiss, arguing that the contracts were not created pursuant to necessary procedure and certification requirements and were, therefore, void. The City also argued that it was not liable to Gill even if the contracts were legal because the Authority was not the City's agent and the contracts were solely between Gill and the Authority. The trial court agreed with the City's argument that the contracts were not valid and, therefore, not enforceable against the City under Section 432.070 and Sections 82 and 95 of the Charter of Kansas City. The case then proceeded to a jury trial against the Authority.

The Authority moved for a directed verdict at the close of the evidence and again at the conclusion of the trial. The circuit court denied both motions. The jury returned a verdict in favor of Gill and awarded $449,000 damages for performance of extra work, $1,065,000 for loss of business opportunities and bonding capacity, and $360,000 under the Prompt Payment Act for a grand total of $1,874,000. After the trial, Gill moved for an award of attorney's fees under the Prompt Payment Act and was awarded $197,371.70, calculated on an hourly basis.

Gill filed a post-trial motion to alter or amend the judgment including the court's earlier order dismissing the City as a defendant. In support of the motion, Gill argued the City was a proper defendant because the contracts were valid and enforceable and because the evidence at trial had shown the City had either directly contracted with Gill, or was so linked to the Authority that the Authority was an agent of the City. The circuit court denied Gill's motion to alter or amend the judgment. The circuit court also overruled the Authority's motion for judgment notwithstanding the verdict or in the alternative, for a new trial. Gill and the Authority filed cross-appeals. The cross-appeals follow.

---

1. All statutory references are to Revised Statutes of Missouri, 2000.

## Gill's Appeal

In Point I, Gill argues the circuit court erred by granting the City's Motion to Dismiss Gill's original petition, because the contracts between Gill and the Authority were enforceable, in that the contracts designated the Authority to act as the City's limited agent. In Point II, Gill argues the circuit court erred by refusing to alter or amend its order dismissing the City, because the Authority and the City are jointly liable for breach of contract and violation of the Prompt Payment Act.

## Point I of Gill's Appeal

In Point I, Gill argues the circuit court erred by granting the City's Motion to Dismiss Gill's original petition, because the contracts between Gill and the Authority were enforceable under Section 432.070 and Sections 82 and 95 of the Charter of Kansas City, in that the contracts were expressly authorized by city ordinance which designated the Authority to act as the City's limited agent for the purpose of constructing the Project, in that the City approved the Management Agreement by ordinance and the contracts were supported by the consideration of Gill's performance.

*Reynolds v. Diamond Foods & Poultry, Inc.,* 79 S.W.3d 907, 909 (Mo.banc 2002), sets forth the standard of review for a motion to dismiss for failure to state a claim upon which relief can be granted:

> [A] motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

In support of Point I, Gill argues the circuit court erroneously interpreted and applied the law by dismissing the City from Gill's breach of contract claim because the contracts are fully enforceable under Missouri law and the allegations in its petition are sufficient to withstand the City's motion to dismiss because the facts set forth by Gill in its petition invoked substantive principles of law that entitled Gill to relief. Gill claims the contracts satisfy Section 432.070 and Sections 82 and 95 of the Kansas City Charter and asserts that the contracts were authorized by city ordinances that were duly signed and authorized by the Mayor of Kansas City, the City Attorney, and the City Director of Finance. Gill points to the fact that the City passed numerous ordinances regarding the funding of the Authority, which, Gill argues, were sufficient to bind a municipality to its contractual obligations. Gill claims that in Kansas City Ordinance 931426, the City designated the Authority to act as the City's limited agent for the purpose of constructing the Project, and because the contracts and change orders were all executed by the Authority as the City's expressly designated agent pursuant to ordinances that were part of the public record, the contracts and change orders met the requirements of Section 432.070. Thus, Gill argues, the contracts and change orders were valid actions of the City acting through its agent and were created pursuant to ordinances and resolutions by the City Council, and the obligations are valid and enforceable.

Section 432.070 provides:

> No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the

scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

Section 82 of the Kansas City Charter provides, in relevant part:

All contracts shall be executed in the name of the city by the head of the department, board or agency or the officer concerned, except contracts made by the commissioner of purchases and supplies, materials or equipment.... No contract or order purporting to impose any financial obligation on the city shall be binding upon the city unless it be in writing and unless there is a balance, otherwise unencumbered, to the credit of the appropriation to which the same is to be charged sufficient to meet the obligation thereby incurred, and unless such contract or order bear the certificate of finance so stating;

Section 95 of the Kansas City Charter provides:

All contracts, agreements or other obligations entered into, all ordinances and resolutions passed, and all orders made contrary to the provisions of this article shall be void, and no person whatever shall have any claim or demand against the city thereunder, nor shall any act or omission on the part of the council, or of any officer or employee of the city, contrary to the provisions of this article, waive or qualify the limitations fixed by this article, or impose upon the city any liability whatever in excess thereof.

Kansas City ordinance 931426, which established the contractual relationship between the City and the Authority, provides, in relevant part:

3.1 *Construction Management.* The City hereby designates the Corporation to act as the City's limited agent for the purpose of constructing the Project. Such limited agency shall terminate upon completion of construction of the Project and the acceptance of the Project by the Corporation on behalf of the City. During the construction of the Project, the Corporation shall have the authority and obligation to act on the City's behalf and to take such actions as are necessary in the sole discretion of the Corporation to properly manage the programming, bidding, scheduling, and construction of the Project[.]

▮▮▮ It is well established under Missouri law "that all contracts with a municipal corporation must be in writing and all persons dealing with a municipal corporation are charged with notice of that law." *Duckett Creek Sewer Dist. v. Golden Triangle Dev. Corp.*, 32 S.W.3d 178, 182 (Mo. App. E.D.2000). The purpose of Section 432.070 is to protect municipalities. *City of Kansas City v. Southwest Tracor, Inc.*, 71 S.W.3d 211, 215 (Mo.App. W.D.2002). Section 432.070 does not protect "parties who seek to impose obligations upon government entities." *Id.* The provisions of Section 432.070 "are mandatory, not directory." *Pub. Water Supply Dist. No. 16 v. City of Buckner,* 44 S.W.3d 860, 864 (Mo. App. W.D.2001). A contract made in violation of the statute is "void rather than voidable." *City of Fenton v. Executive Int'l Inn, Inc.,* 740 S.W.2d 338, 340 (Mo. App. E.D.1987). " 'The fact that a municipality has received the benefit of a performance by the other party does not make the municipality liable either on the theory of ratification, estoppel or implied contract.' " *Mo. Int'l Investigators, Inc. v. City of Pacific,* 545 S.W.2d 684, 685 (Mo.

App.1976) (quoting *Kansas City v. Rathford*, 353 Mo. 1130, 186 S.W.2d 570, 574 (1945)).

In *Allen v. City of Fredericktown*, 591 S.W.2d 723, 725 (Mo.App. E.D.1979), the appellants argued that the existence of a municipal ordinance providing for reimbursement of water and sewer line expenses created a unilateral or executory contract between the appellants and the municipal defendant. *Allen* rejected this argument and held that the ordinance that is not a contract in itself could not, under any circumstances, constitute the writing demanded by Section 432.070. *Id.*

■ The instant case is on point with *Allen*. Kansas City ordinance 931426 provided that the Authority should act as the City's limited agent for the purpose of constructing the Project and that the City would finance the Project out of its appropriations and either pay the Authority or pay the Authority's approved contractor directly. The City also passed numerous ordinances related to the creation and funding of the Project. However, the City did not enter into a contract with Gill that complied with Section 432.070. Gill is charged with notice of Section 432.070, and, in order to impose an obligation on the City, Gill was required to enter a contract that complied with the statute. Because there was no contract between the City and Gill that complied with Section 432.070, the circuit court did not err in dismissing Gill's breach of contract claim against the City.

Gill cites two cases to argue that the contracts between Gill and the Authority are enforceable against the City. Gill cites *Austin Western Road Machinery Company v. City of New Madrid*, 185 S.W.2d 850, 853 (Mo.App.1945), which held that a board of aldermen could authorize a mayor to contract for the purchase of a road grader and that the contract was not re-quired to be recorded where authority granted to the mayor by the board of aldermen was of record. Gill also cites *Platte City v. Paxton*, 141 Mo.App. 175, 124 S.W. 531, 533 (1910), which held that despite no written contract being executed by the city and plaintiff, "[t]he ordinance, plaintiff's written bid duly signed, and the resolution accepting the bid which was duly passed and made of record, constituted a written contract and were a sufficient compliance with the statute."

The instant case is distinguishable from both *Austin Western* and *Platte City*. Unlike *Austin Western*, the recording of the contract is not at issue in this case, but rather the existence of a contract between Gill and the City is at issue. Unlike *Platte City*, there was no resolution by the City accepting Gill's bid.

Gill also argues in support of Point I that Gill's contract with the City was enforceable under the theory of substantial compliance. Gill claims that the City authorized contracts with Gill through ordinances and funded the change orders and that the ordinances were in writing and signed by the Mayor and the Director of Finance. Gill claims that even if the writings fall short of the requirements of Section 432.070 and Section 82 of the Kansas City Charter, the parties would still have an enforceable contract under the doctrine of substantial compliance.

In support of its substantial compliance argument, *Gill* cites *Veling v. City of Kansas City*, 901 S.W.2d 119 (Mo.App. W.D. 1995). The plaintiff in *Veling* was a college student who received a written offer for employment as a summer intern with the municipal defendant on city letterhead. *Id.* at 120. The plaintiff accepted the municipal defendant's offer in writing. *Id.* at 121. After the plaintiff worked for one week, he was informed that the municipal

defendant would not execute a personal service contract with him and that he would not be employed. *Id.* The plaintiff was also informed that he would not be paid for the days he had already worked. *Id.* The plaintiff filed a breach of contract claim and sought damages for lost pay and consequential damages for lost educational opportunity. *Id.* The circuit court dismissed the plaintiff's claim on the grounds that the plaintiff failed to allege that the municipal defendant had entered into an enforceable contract pursuant to the statutory requirements of Section 432.070 and the Kansas City Charter. *Id.* This court reversed on the grounds that the writings alleged by the plaintiff could constitute a valid contract between the parties pursuant to the doctrine of substantial compliance. *Id.* at 124. *Veling* noted that the plaintiff was seeking to establish an employment contract and that the plaintiff was "not asking the courts to overlook a statutory or charter requirement for a valid contract with a municipality." *Id.* at 123–24. Instead, the plaintiff was seeking a court finding of substantial compliance with Section 432.070 and the Kansas City Charter. *Id.* at 124.

The instant case is distinguishable from *Veling*. *Veling* allowed a circuit court to consider the validity of an employment contract between the parties pursuant to the doctrine of substantial compliance. In *Veling*, the municipal defendant had formed a contract with the plaintiff, but the City was not a party to a contract with Gill in the instant case.

In support of Point I, Gill also argues there was no separate impediment to Gill's claims that could have justified their dismissal. Gill claims its petition sufficiently alleged all of the elements of breach of contract and violation of the Prompt Payment Act. Gill claims it is of no consequence that its petition did not specifically address the requirements of Section 432.070 in detail.

*Lalumondier v. County Court of St. Francois County*, 588 S.W.2d 197 (Mo. App. E.D.1979), addressed the issue of sufficiency of pleadings in a breach of contract claim where the contract was subject to the requirements of Section 432.070. *Lalumondier* held that a petition failed to state a cause of action because it failed to contain an allegation that the contracts met the requirements of Section 432.070. *Id.* at 199.

In support of its argument that its pleadings against the City were sufficient, Gill cites *Browning v. Salem Memorial District Hospital*, 808 S.W.2d 943 (Mo. App. S.D.1991). The plaintiff in *Browning* prevailed on a breach of contract claim. *Id.* at 944. The defendant argued on appeal that the case must be remanded and set aside because the defendant was a municipal corporation and the petition failed to plead facts demonstrating compliance with Section 432.070. *Id. Browning* held that the plaintiff's petition against the hospital district alleging breach of contract was not fatally defective for failure to plead facts demonstrating compliance with Section 432.070. *Id.* at 946. The hospital district did not object to the sufficiency of the petition until after the verdict, and the petition was sufficient to advise the hospital district with reasonable certainty of the cause of action it was called upon to defend. *Id.*

The instant case is more on point with *Lalumondier* than with *Browning*, because Gill's breach of contract claim against the City was dismissed. *Browning* addressed an argument on appeal that a case must be remanded after having reached a jury verdict, and a different standard of review applied. The standard of review in *Browning* is that a petition will be found sufficient after verdict if,

after allowing all reasonable inferences, the defendant is sufficiently advised as to the cause of action it is called upon to defend. *Id.* In the instant case, Gill's breach of contract was dismissed, and no jury verdict was reached. Therefore, a different standard of review applies, and the circuit court did not err in requiring Gill to prove or plead that the contract allegedly breached by the City was in compliance with Section 432.070.

Point I is denied.

## Point II of Gill's Appeal

In Point II, Gill argues the circuit court erred by refusing to alter or amend its order dismissing the City and by refusing to reinstate the City and enter judgment against it on Gill's Motion to Alter or Amend Judgment because the Authority and the City are jointly liable for breach of contract and violation of the Prompt Payment Act in that the evidence showed the Authority was an authorized agent of the City.

In support of Point II, Gill claims the evidence at trial proved the agency relationship between the City and the Authority as a matter of law and therefore the circuit court abused its discretion in failing to grant Gill's motion to amend judgment because the City was jointly liable through the acts of its agent, the Authority, and when the Authority signed the contract and authorized the extra work, the City was bound to pay for the work. Gill argues the evidence showed the City manifested its intent for the Authority to act on its behalf with respect to the 18th and Vine Project. Gill claims the City, through ordinances and the Management Agreement, duly authorized the Authority to enter into contract obligations on behalf of the City, appropriated funds to cover all construction costs for the Project, and held itself out as an agent through ordinances and

public records. Gill argues that for the City to claim the Authority was not its agent contradicts the plain language of the Management Agreement because of the agreement's use of the specific term "agent." Gill also argues in support of Point II that the record establishes as a matter of law that the City had the right to control and did control the means and manner of the Authority's construction duties, including that the City loaned key personnel to the Authority for the duration of the project; imposed extensive reporting requirements on the Authority; chose the contractors; controlled the Project's financing and completely funded the project, either by reimbursing the Authority or paying the contractors directly. Gill claims the Management Agreement made it the City's responsibility to prepare the bidding schedules and bid packages incorporating the designated plans and meeting the requirements of Missouri Law and the City charter and ordinances in a form ready for advertisement for public bid. Gill also asserts that, pursuant to the Management Agreement, change orders to the contracts were prepared for and in some instances executed by the City directly during the course of the construction. Gill concludes that the record establishes that the City was ultimately responsible for the acts of the Authority in furtherance of its discharge of the City's obligations, and argues the trial court should have reinstated Gill's claim against the City and held the City accountable for the payment Gill earned for its work on the Project.

■■■ Rule 75.01 gives the circuit court inherent power to amend a judgment upon a finding of good cause during the thirty-day period after entry of judgment. *Stroup v. Leipard,* 981 S.W.2d 600, 603 (Mo.App. W.D.1998). The circuit court is vested with considerable discretion in ruling on a motion to amend judgment, and

the court of appeals will not reverse a circuit court's decision on a motion to amend judgment unless there is an abuse of discretion. *Id.* The standard of review for denial of a motion to amend judgment is abuse of discretion. *Brockman v. Soltysiak,* 49 S.W.3d 740, 744 (Mo.App. E.D. 2001).

■ In the instant case, the circuit court's dismissal of Gill's breach of contract claim against the City was supported by case law providing that the provisions of Section 432.070 "are mandatory, not directory." *City of Buckner,* 44 S.W.3d at 864. Because the mandatory provisions of Section 432.070 were not complied with, even if the contract with the Authority was valid, the obligations of the contract cannot be imposed on the City. Therefore, the circuit court did not abuse its discretion in dismissing the breach of contract claim or in denying Gill's motion to amend judgment.

Point II is denied.

### The Authority's Cross Appeal

As we analyzed the Authority's points, we found that a number of allegations of error were preserved, but many were not. We broke the allegations down into five categories as set forth below. We first address the categories of alleged errors that were preserved and then those that were not.

### Preserved Motion for Directed Verdict Errors

#### (Points I, IX (B), IX (C) and X)

In Point I, the Authority argues the circuit court erred in not granting the Authority's motion for directed verdict at the close of Gill's case because Gill failed to prove it made claims in a timely manner as required by the contracts. In Point IX (B), the Authority argues the circuit court erred in not granting the Authority's motion for directed verdict on the claim for loss of productivity because Gill did not present evidence of a cardinal change. In Point IX (C), the Authority argues the circuit court erred in not granting the Authority's motion for directed verdict on the claim for loss of productivity because Gill accepted payment for the Additional Work Authorization (AWA) work without reserving the right to claim any additional impact costs. In Point X, the Authority argues the circuit court erred in not granting the Authority's motion for directed verdict because Gill's claims for additional compensation as set forth in the finalization of pricing report are barred by the doctrine of estoppel and the doctrine of accord and satisfaction.

■ The appellate standard of review for denial of a motion for directed verdict is whether the non-moving party submitted substantial evidence that tended to prove the facts essential to its claim. *Lasky v. Union Elec. Co.,* 936 S.W.2d 797, 801 (Mo.banc 1997). The evidence is viewed in the light most favorable to the non-moving party, affording the non-moving party all reasonable inferences from the evidence and disregarding the moving party's evidence that contradicts the non-moving party's claims. *Id.* A jury verdict will be reversed on appeal for insufficient evidence only if there is a " 'complete absence of probative facts' " to support the verdict. *Seitz v. Lemay Bank & Trust Co.,* 959 S.W.2d 458, 461 (Mo.banc 1998) (quoting *Elliott v. St. Louis Southwestern Ry. Co.,* 487 S.W.2d 7, 11 (Mo.1972)).

■ In Point I, the Authority argues the circuit court erred in not granting the Authority's motion for directed verdict at the close of Gill's case because Gill failed to make a submissible case in that it failed to prove by credible and substantial evi-

dence that it made claims in a timely manner as required by section 4.7.3 of the contracts. In support of this argument, the Authority asserts that Section 4.7.3 of the contract requires claims by either party to be made in writing within twenty-one days of each event that gives rise to such a claim or within twenty-one days after the claimant first recognizes the condition giving rise to the claim, whichever is later. Section 4.7.3 also provides that all claims be made within twenty-one days of the occurrence as a condition precedent that must be complied with before suit is filed on a particular claim. The Authority argues that Gill did not give written notice of its intent to claim additional payments within twenty-one days of the execution of AWAs or even within twenty-one days of substantial completion of the projects. Gill eventually made additional claims on the finalization of pricing for increased and extended job site supervision and management, union scale increase costs, extended job site presence, extra equipment rental costs, and lost labor productivity. The Authority argues that Gill should have been aware of these additional costs within the twenty-one day notice deadline.

Gill presented sufficient evidence to allow the jury to find that the twenty-one day notice provision had been waived. Rick Gill, the president of Gill, testified that the hectic schedule contributed to the parties not following the procedures associated with additional or extra work. Rick Gill also testified that the Authority requested Gill to perform a great deal of work that was beyond the scope of the original three contracts and, had the change order procedures been meticulously followed, the Project would have been delayed significantly. Rick Gill testified that in lieu of the change order forms, he submitted AWAs for payment for the extra work because the Authority was verbally asking for additional work and verbally guaranteeing payment for the extra work. The Authority, in its brief, acknowledges there is evidence that it waived the procedure for change orders.

In addition, Rick Gill testified that it was not possible to satisfy the Authority's requests for additional work under the change order procedure and that he had asked the Authority for change orders, but was told that there was not enough time, so he began using AWAs. There was also testimony by Rick Gill that the extent of the additional costs associated with Gill's completion of the original contracts was not ascertainable until after the work on the project was substantially completed. Rick Gill testified to a "hectic...process" with "no supervision, no direction, no scheduling, and little in management control of what was going on." This contributed to the parties not being able to follow established procedures and if procedures had been followed completely, the project would have been delayed significantly.

Gill also hired John Devaney, a construction consultant, to submit a finalization of pricing report to the Authority analyzing the additional costs Gill accumulated by agreeing to perform the extra work on the project. Devaney testified that the project was subject to a hectic schedule, that Gill was asked to perform tasks not part of the original contracts, and that when Gill's employees were pulled from their assigned tasks under the contracts, it became more expensive for Gill to complete the work. Devaney also testified that Gill was asked to supply additional labor for the construction manager, and that the additional costs could not be ascertained until after the work was substantially completed.

The testimony of Rick Gill and John Devaney supported the circuit court's determination that the evidence was suffi-

cient to submit Gill's breach of contract claim to the jury. The evidence went to the explanation of why the twenty-one day notice provision could not be applied to the finalization of pricing payment request, and that by accepting and acknowledging the extra work and the procedures to approve it, the notice provision was waived. Viewing the evidence in the light most favorable to Gill, and disregarding the Authority's evidence that contradicts Gill's claims, there was evidence to show it was impossible for Gill to know the full impact of all the delays and extra costs associated with completing their contracts with the Authority until the project and the extra work were completed, due to the Authority's actions.

We do not review the merits of Gill's claim. Our review is to determine whether there was a submissible case. We find that there was not a complete absence of probative facts on the issue. Therefore, the circuit court did not err in denying the Authority's motion for directed verdict on the grounds that Gill failed to make a submissible breach of contract claim.

Point I is denied.

 In Point IX (B), the Authority argues the circuit court erred in not granting the Authority's motion for directed verdict on the claim for loss of productivity because Gill failed to make a submissible case in that Gill did not present evidence of a cardinal change, merely evidence of work it agreed to perform under the contracts.[2]

In support of this argument, the Authority claims the cardinal change theory is not substantiated by the facts. The Authority claims that Gill was not required by the Authority to perform additional work. The Authority also claims the AWA forms were drafted by Gill and provided "additional work to be performed under the same conditions as specified in the original contract unless otherwise stated." The Authority also argues there was no evidence that anything was "otherwise stated" and that the AWAs were controlled by the contracts.

In Point IX (C), the Authority argues the circuit court erred in not granting the Authority's motion for directed verdict on the claim for loss of productivity because Gill failed to make a submissible case in that Gill agreed that the AWA work was under the contracts when Gill priced, submitted, and accepted payment for the AWA work without reserving any right to claim any additional impact costs.

 In support of this argument, the Authority argues that Gill did not present the required evidence that the AWA costs did not include all direct and indirect costs. The Authority argues that evidence of all direct and indirect costs is required under Missouri law and that reservation of rights to claim additional costs is necessary for recovery. The Authority claims Gill agreed to do all of the additional work requested by the Authority, priced the work which was memorialized in the AWAs and subsequent change orders, and never reserved the right to claim impact costs or other costs it claims to have in-

**2.** The cardinal change doctrine is a breach that "occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for." *Allied Materials & Equip. Co. v. United States*, 215 Ct.Cl. 406, 569 F.2d 562, 563–64 (1978). "[A] cardinal change is so profound that it is not redressable under the contract, and thus renders the government in breach." *Id.* at 564. "The cardinal change doctrine asks whether a modification exceeds the scope of the contract's changes clause[.]" *AT&T Communications, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir.1993).

curred. The Authority argues the AWAs were printed by Gill, controlled by the contracts, and, therefore, the AWA work was not extra work and there was not a cardinal change to the contracts by virtue of the AWAs or the subsequent change orders. The Authority also argues Gill did not present sufficient evidence that the AWA work was extra work outside the scope of the contracts. The Authority claims instead that the AWA work was additional work under the contracts as opposed to extra work. Because this work was not extra work, the Authority argues the work was actually additional work for which Gill was paid in full, and, therefore, there was no breach of contract by the Authority. These arguments lack merit.

In support of Point IX (C), the Authority cites *Uhle v. Tarlton Corp.*, 938 S.W.2d 594, 599 (Mo.App. E.D.1997), in which the denial of a defendant contractor's motion for directed verdict was reversed on a plaintiff subcontractor's claim for quantum meruit. *Uhle* held that "extra work" that would entitle the plaintiff to a quantum meruit claim meant " 'work of a nature [1] not contemplated by the parties and [2] not controlled by the contract.' " *Id.* at 597 (quoting *Am. Drilling Serv. Co. v. City of Springfield,* 614 S.W.2d 266, 274 (Mo. App. S.D.1981)). *Uhle* found that the work at issue "was not extra work because the work was controlled by the contract." *Id.*

In the instant case, Gill presented sufficient evidence to support a jury finding that the work in the AWA's was outside of the contracts. Jim Chrisco, the foreman for Gill Construction, testified that Gill performed work beyond the three contracts, such as woodwork on the roof for the parapet walls, woodwork for the heating and cooling units on the roof, constructing curbs, and building wood framing around the windows that were sup-

posed to be installed. Chrisco testified that the work performed outside of the contracts by Gill was not part of a bid package to any other contractor and that the project could not continue without this work being done. Chrisco further testified that he did not recall ever having a written contract for any of the work performed under the AWAs. Chrisco also testified that the Authority requested extra work that was documented with AWAs and would have otherwise required renegotiating the contracts and giving bids to perform the extra work. John Devaney testified that the 18th and Vine project was substantially delayed and ran into construction difficulties because of its existing condition and, that as a result, extra work had to be performed on the project. Devaney also testified that substantial extra work was directed by the Authority through the construction manager. Devaney testified that Gill performed over eighty percent more work than was contemplated under the first two contracts and Gill performed twenty-five percent more work than was contemplated under the third contract. Devaney testified that the original supervision Gill had planned was inadequate given the extra work and the delayed, disrupted, hectic pace of the Project. Devaney also testified that extra work was being ordered at all times. Gill also introduced into evidence the finalization of pricing report that provides detailed documentation of all the extra work performed and the associated costs. Holding the evidence in the light most favorable to Gill and disregarding the Authority's evidence that contradicts Gill's claims, Gill presented sufficient evidence that the work performed under the AWAs was extra work that was not controlled by the contract. The instant case is distinguishable from *Uhle* in that Gill presented sufficient evidence that the AWA work was outside of the contract. Therefore,

the circuit court did not err in denying the Authority's motion for directed verdict on the grounds that Gill did not perform extra work outside of the contracts.

Points IX (B) and IX (C) are denied.

In Point X, the Authority argues the circuit court erred in not granting the Authority's Motion for Directed Verdict at the close of all evidence because Gill's claim for additional compensation is barred by the doctrine of estoppel in that the evidence showed that Gill agreed to perform additional work, priced, billed, and accepted payment without reservation for such work, and the Authority relied on Gill's actions to its detriment and is barred by the doctrine of accord and satisfaction in that the parties reached an agreement as to the amount to be paid to Gill and the Authority paid that amount. The Authority claimed at the motion hearing that Gill attached the AWAs to the pay applications under a sworn certification that the work was performed under the contracts with the intent that the Authority would rely upon this and make payment. The Authority also claimed at the hearing that it relied on the AWAs and made payment, and, therefore, Gill is prevented by the doctrine of equitable estoppel from changing the substance of the original documents. The Authority also argues that Gill could have notified the Authority of its intent to assess additional charges at the time the AWAs were written. In addition, the Authority argued at the hearing that by depositing checks received in the account without reservation, Gill took a lesser sum as an accord and satisfaction and is barred from claiming any additional costs. These arguments lack merit.

 Estoppel is an affirmative defense under Rule 55.10, and the burden of proof is upon the party asserting it. *Peerless Supply Co. v. Indus. Plumbing &*

*Heating Co.*, 460 S.W.2d 651, 666 (Mo. 1970). A party relying on the doctrine of estoppel has the burden to prove all essential elements of estoppel " 'by clear and satisfactory evidence.' " *Dir. of Revenue v. Oliphant*, 938 S.W.2d 345, 346 (Mo.App. W.D.1997) (quoting *Peerless Supply*, 460 S.W.2d at 666). Accord and satisfaction is also an affirmative defense where the burden of proof is upon the party asserting it. *Dixon v. Brannan*, 970 S.W.2d 384, 386 (Mo.App. E.D.1998).

In the instant case, the Authority had the burden of proving all of the essential elements of estoppel or accord and satisfaction by clear and satisfactory evidence. Gill had no duty to prove a lack of estoppel or accord and satisfaction.

 "If a party makes a case under any theory submitted to the jury, the motion for directed verdict and motion for judgment notwithstanding the verdict are properly denied." *Daniels v. Bd. of Curators of Lincoln Univ.*, 51 S.W.3d 1, 5 (Mo. App. W.D.2001). A verdict may not be directed for defendant if plaintiff has made a case on any theory pleaded. *Hammon v. Gentemann*, 423 S.W.2d 5, 7 (Mo.App. 1967).

In the instant case, Gill made a submissible breach of contract claim. Because the burden of proof was on the Authority, even if the Authority did establish a prima facie case of estoppel or accord and satisfaction, there was no burden on Gill to prove the contrary, and the trier of fact could disbelieve the evidence in either affirmative defense. Because Gill did not stipulate to the facts necessary to prove the elements of either defense for the Authority, it was a question for the jury as to whether the affirmative defenses of estoppel or accord and satisfaction were proven. Viewing the evidence in a light most favorable to Gill, the circuit court did not err in

denying the Authority's motion for directed verdict on estoppel or accord and satisfaction grounds.

Point X is denied.

## Preserved Motion for Judgment Notwithstanding the Verdict Error

### (Point XI)

In Point XI, the Authority argues the circuit court erred in failing to enter judgment for the Authority notwithstanding the verdict because Gill failed to make a submissible case on its claim for loss of business opportunity in that Gill presented no evidence that the Authority could have reasonably foreseen the loss of business opportunities at the time that the contracts were executed.

 The standard of review for the denial of a motion for judgment notwithstanding the verdict is the same as for review of a denial of a motion for directed verdict. *Daniels,* 51 S.W.3d at 5. The record is reviewed "to determine whether the plaintiff made a submissible case." *Id.* In determining whether the evidence was sufficient to support a jury's verdict, an appellate court views the evidence "in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences which conflict with that verdict." *Id.* If there are probative facts on the record to support the conclusion reached by the jury, the denial of a motion for judgment notwithstanding the verdict should be affirmed. *Id.* "If a party makes a case under any theory submitted to the jury, the motion for directed verdict and motion for judgment notwithstanding the verdict are properly denied." *Id.*

 In support of Point XI, the Authority argues that damages for breach of contract are limited to damages arising in the usual course of activity, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the possible result of the breach. The Authority claims that Gill pleaded special damages but failed to allege or prove that it was within the contemplation of the parties at the time the three contracts were entered into that Gill would suffer any lost business opportunities or loss of bonding capacity as a result of the Authority's failure to pay Gill's finalization of pricing claim or that Gill would make any such claim for possible loss of future business. The Authority claims that Gill offered no competent and substantial evidence that, at the time the contracts were entered into, Gill's claims for loss of business opportunities due to alleged loss of bonding capacity could have been reasonably contemplated by the Authority. The Authority claims the circuit court erred in submitting the issue of damages resulting from lost anticipated profits to the jury and failing to enter judgment notwithstanding the verdict or ordering a new trial on this point. These arguments lack merit.

 In breach of contract actions, "in addition to recovering the benefit of his bargain, a plaintiff may also recover for damages naturally and proximately caused by the commission of the breach and for those that could have been reasonably contemplated by the defendant at the time of agreement." *Crank v. Firestone Tire & Rubber Co.,* 692 S.W.2d 397, 402 (Mo.App. W.D.1985). "[A] breaching party is only liable for those consequences that were reasonably foreseeable at the time the parties entered into the contract." *Birdsong v. Bydalek,* 953 S.W.2d 103, 116 (Mo.App. S.D.1997).

In the instant case, Gill presented sufficient evidence to support a jury finding of consequential damages. Rick Gill testified that financial documents were submitted to bonding companies and that the bonding companies denied Gill its desired bonding because the financial documents showed an account receivable that was unpaid for a long period of time. Rick Gill further testified that Gill lost three contracts that were the basis of the lost profits claim due to a lack of bonding that resulted from the Authority's refusal to pay Gill for the work completed on the project. Furthermore, Devaney testified that Gill was required to provide a bond on the 18th and Vine Project and that Gill was charged a premium of three percent on any contract increase amounts. The Authority was aware of Gill's bonding requirements to obtain contracts. Holding the evidence in the light most favorable to Gill, damages suffered by Gill for lost profits as a result of the Authority's refusal to pay Gill for the work completed could have been reasonably contemplated at the time the contract was formed. Therefore, the circuit court did not err in denying the Authority's motion for judgment notwithstanding the verdict.

Point XI is denied.

### Unpreserved Instructional Errors

### (Points II, III, VI and VIII)

These alleged instructional errors were not preserved for Appeal. Rule 70.03 provides:

Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the in-

structions. The objections must also be raised in the motion for new trial in accordance with Rule 78.07.

■■■■ "The rationale behind making objections is to avert error and allow the trial court to make an intelligent ruling." *Gamble v. Bost,* 901 S.W.2d 182, 188 (Mo. App. W.D.1995). "Further, a point on appeal must be based upon the theory voiced in the objection at trial and a defendant cannot expand or change on appeal the objection as made." *Zakibe v. Ahrens & McCarron, Inc.,* 28 S.W.3d 373, 387 (Mo. App. E.D.2000).

In Point II, the Authority argues the circuit court erred in submitting Gill's verdict director, Instruction No. 7, to the jury and in denying the Authority's Motion for a New Trial because Instruction No. 7 was prejudicial in that it misstated the contract provisions that were allegedly breached and gave the jury a roving commission to determine what contract provision the Authority breached. Specifically, on appeal, the Authority claims that the verdict director should have been modified to include whether the AWAs were a part of the original agreement and whether Gill could request additional costs without reserving the right to them or without timely notice of such a claim. Gill argues that the objection at trial was vague, confusing, and did not address the issues now raised on appeal. Thus, the trial court was never informed of this alleged defect. Gill also argues that these affirmative defenses the Authority wishes to have added to Instruction No. 7 were all set forth in Instruction No. 8 and were argued by the Authority, and when the instructions are read as a whole all the claims and desired defenses were set out.

Instruction No. 7 provided:

Your verdict must be for the plaintiff if you believe:

First, plaintiff and defendant entered into an agreement whereby plaintiff agreed to perform various construction services at the 18th & Vine project and defendant agreed to pay for construction services properly performed and to provide construction management for the project; and

Second, plaintiff complied with all contract requirements to entitle it to payment, or, the parties to the contract by agreement or course of conduct modified such requirements; and,

Third, defendant did not pay plaintiff in full, for work requested by the defendant and performed by plaintiff; and,

Fourth, because of such failure to pay in full, defendant's obligations were not performed, and

Fifth, plaintiff was thereby damaged, unless you believe plaintiff is not entitled to recover by reason of Instruction Number 8.

Instruction No. 8 provided:

Your verdict must be for Defendant 18th and Vine Authority if you believe:

First, Plaintiff failed to make its claims in compliance with the contract in that they were not made within 21 days after the occurrence of each event giving rise to such claims or within 21 days after Plaintiff first recognized the condition giving rise to the claim and the claims were not made in writing, or

Second, Plaintiff and Defendant agreed upon all additional work performed, the pricing for said additional work under the respective contracts and that Defendant paid said amounts in reliance upon Plaintiff's agreement; or

Third, Plaintiff deposited Defendant's payments for amounts less than claimed without reservation; or

Fourth, that Plaintiff was paid in full for all amounts timely claimed.

In *Zakibe*, 28 S.W.3d at 387, the appellant argued on appeal that an instruction gave the jury a roving commission in that it submitted an abstract legal proposition. During the instruction conference, the appellant did not object to that particular instruction on roving commission grounds, but instead argued the instruction was unsupported by the evidence, was improper, and was confusing to the jury. *Id. Zakibe* found that this error was not preserved for review. *Id.*

In the instant case, the Authority made the following objection to Instruction No. 7 during the instruction conference:

Well, Your Honor, Instruction # 7 does not fairly and completely depict the responsibilities of the respective parties with sufficient particularity to allow the jury to make an educated decision, in that it recognizes an agreement but it—so, it encapsulizes and paraphrases the agreement as to oversimplify to the detriment of the defendant's defense.

The circuit court subsequently overruled the Authority's objection to Instruction No. 7.

■ The instant case is on point with *Zakibe* because the Authority did not object to Instruction No. 7 on the grounds it now asserts on appeal. Also the vague, general objection at trial did not allow the court to make an informed ruling as to what the Authority was requesting. Therefore, Point II is not preserved for appellate review.

■ In Point III, the Authority argues the circuit court erred in submitting Gill's Verdict Form A to the jury and in denying the Authority's Motion for a New Trial because Verdict Form A was prejudicial in that it did not define extra work or loss of business opportunities anywhere in the instruction package for Verdict Form A and

gave the jury a roving commission. The Authority has failed to preserve this point.

In *Seidel v. Gordon A. Gundaker Real Estate Co.*, 904 S.W.2d 357, 364 (Mo.App. E.D.1995), the appellant objected at trial to the use of the word "duty" in an instruction on the grounds that no legal duty existed and the instruction asked the jury to make a legal determination of whether or not a duty existed. On appeal, the appellant argued that the instruction failed to define the word "duty." *Id.* Because the appellant raised different grounds for error on appeal than at trial, appellant failed to preserve the issue for review. *Id.* The court also noted:

> Where a party contends that a term in an instruction needs definition, it is that party's duty to request and offer an instruction containing a definition of that term. Absent such a request and offer, that party cannot complain on appeal of the trial court's failure to define the term.

*Id.* (Citations omitted.)

In the instant case, the Authority made the following objection to Verdict Form A during the instruction conference:

> Well, Your Honor, we previously objected to Instruction #5, in that it fails to list all of the claims and the Verdict Form A that has been supplied by the plaintiff on the breach of contract claim, also includes a line item for damages for loss of business opportunity. The loss of business opportunity occurred, according to the evidence before this court and heard by the jury, in 1999 and 2000, a period of time where a number of intervening circumstances over which defendant certainly had no ability to control or supervise, nor did the defendant have any duty to control or supervise, what actually cost—caused the plaintiff's loss of business opportunities. And, thereby, we believe together with

the numerous interjections of the party previously dismissed from this suit to create a deeper perception of the deeper pocket from which any judgment might be paid, to severely prejudice defendant's rights to have a fair hearing before this jury.

The circuit court overruled this objection and submitted Gill's proposed Verdict Form A to the jury. Although the transcript of the instruction conference indicates that the circuit court rejected a proposed verdict form submitted by the Authority, this proposed form is not part of the record on appeal, and there is no indication that this proposed verdict form contained definitions of "extra work" or "loss of business opportunities." The Authority also did not specifically object to the verdict form lacking definitions of "extra work" or "loss of business opportunities" during the instruction conference. Therefore, Point III is not preserved for appellate review.

■■■ In Point VI, the Authority argues the circuit court erred in giving Instruction No. 11 because it misdirected the jury to the prejudice of the Authority in that the instruction failed to define the word "due" as it applies to the Prompt Pay Act and, therefore, allowed the jury to award interest without determining that Gill had met the statutory elements necessary for recovery. The Authority has failed to preserve this point.

*Seidel*, 904 S.W.2d at 364, requires an objection to an instruction on the grounds that it does not define a word to be raised at the instruction conference. The objecting party has a duty to request and offer an instruction containing a definition of that term. *Id.*

In the instant case, the Authority made the following objection to Instruction No. 11 during the instruction conference:

Your Honor, defendant does not believe that plaintiff has stated a submissible case on the Prompt Pay Act in order to reach the jury, and therefore, objects and accepts [sic] to Instruction # 11. And, I guess really need to offer an objection for Instructions 10 through 13 for that reasoning.

The circuit court subsequently overruled the Authority's objection to Instruction No. 11. The instant case is on point with *Seidel* because the Authority did not specifically object to the instruction lacking a definition of the word "due" during the instruction conference. Therefore, Point VI is not preserved for appellate review.

 In Point VII, the Authority argues the circuit court erred in giving Instruction No. 13 because it was prejudicially erroneous and misstated the law in that the instruction required the jury to award interest rather than giving the jury the discretion provided under the Prompt Pay Act. The Authority has failed to preserve this point.

In *Daniels*, 51 S.W.3d at 11, the appellant made a general objection to the submissibility of the case during the instruction conference then later objected to the form of the verdict directing instruction on appeal. *Daniels* held that the contentions of error with respect to the verdict director were not preserved for appeal. *Id.*

In the instant case, the Authority made the following objection to Instruction No. 13 during the instruction conference:

Yes, Your Honor, my continuing objection to Instructions 10 through 13 on the part of the defendant.

The circuit court subsequently overruled the Authority's objection to Instruction No. 13. The instant case is on point with *Daniels* because the Authority only raised a general objection to Instruction No. 13 on submissibility grounds then later con-

tended on appeal that the instruction required the jury to award interest rather than giving the jury the discretion provided under the Prompt Pay Act. Therefore, Point VI is not preserved for appellate review.

## Unpreserved Motion for Directed Verdict Errors

### (Points IV, V, IX(A))

*Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 163 (Mo.App. W.D. banc 1997), sets forth the requirements for preserving alleged motion for directed verdict and submissibility errors for review:

To preserve the question of submissibility for appellate review in a jury-tried case, a motion for directed verdict must be filed at the close of all the evidence and, in the event of an adverse verdict, an after trial motion for a new trial or to set aside a verdict must assign as error the trial court's failure to have directed such a verdict. Failure to move for a directed verdict at the close of all the evidence waives any contention that plaintiff failed to prove a submissible case. Similarly, a motion for directed verdict that does not comply with the requirements of Rule 72.01(a) neither presents a basis for relief in the trial court nor preserves the issue in the appellate court. Rule 72.01(a) directs that "[a] motion for a directed verdict shall state the specific grounds therefor." Where an insufficient oral or written motion for directed verdict has been made, a subsequent post-verdict motion is without basis and preserves nothing for review.

(Citations omitted.)

 In Point IV, the Authority argues the circuit court erred in submitting Gill's claim for interest under Section 34.057 to the jury because Gill failed to make a

submissible case in that Gill adduced no evidence that the contracts were public works contracts and therefore the Prompt Pay Act did not apply. The Authority has failed to preserve this point.

The Authority did not raise the issue of whether Gill presented any evidence that the contracts were public works contracts in its motion for directed verdict. The Authority also did not raise this issue in its motion for new trial. Therefore, Point IV is not preserved for appellate review.

In Point V, the Authority argues the circuit court erred in submitting Gill's claim for interest under Section 34.057 to the jury because Gill failed to prove that the Prompt Pay Act applied in that it did not present evidence that (A) it had submitted a final invoice to the Authority to trigger the Prompt Pay Act; (B) its "finalization of pricing" claim was for liquidated damages, as is required by the Prompt Pay Act; and (C) that the Authority withheld final payment from Gill except in good faith for reasonable cause pursuant to Section 34.057. The Authority has failed to preserve this point.

Although the Authority raised the issues of a final invoice and withholding of final payment in good faith in its motion for new trial, these issues were not raised in the motion for directed verdict. Therefore, Point V is not preserved for appellate review.

In Point IX (A), the Authority argues the circuit court erred in not granting the Authority's motion for directed verdict on the claim for loss of productivity because Gill failed to make a submissible case in that the "cardinal change" theory does not apply to a private nonprofit corporation.

The Authority did not raise this issue in its motion for directed verdict or its mo-

tion for new trial. Therefore, Point IX (A) is not preserved for appellate review.

## Unpreserved Motion for Judgment Notwithstanding the Verdict Errors

### (Points XII, XIII and XIV)

"A motion for judgment notwithstanding the verdict is a motion 'to have judgment entered in accordance with the motion for a directed verdict.'" *Daniels*, 51 S.W.3d at 5 (quoting Rule 72.01(b)). "Therefore a sufficient motion for a directed verdict is required to preserve the motion for judgment notwithstanding the verdict and for appeal." *Id.* at 5–6. "An issue not raised in a motion for a directed verdict may not be used to seek a judgment notwithstanding the verdict on that issue or for obtaining appellate review of the trial court's denial of judgment notwithstanding the verdict on that ground." *Id.* at 6. "Where an insufficient oral or written motion for directed verdict has been made, a subsequent post-verdict motion is without basis and preserves nothing for review." *Letz*, 975 S.W.2d at 163.

In Point XII, the Authority argues the circuit court erred in denying the Authority's motion for judgment notwithstanding the verdict because Gill failed to make a submissible case on its claim for lost profits in that Gill's evidence of lost profits was based on gross profits, contrary to Missouri law which requires that such damages be based on net profits. The Authority has failed to preserve this point.

Although the Authority raised this issue in its motion for judgment notwithstanding the verdict, the Authority did not raise the issue in its motion for directed verdict. Therefore, Point XII is not preserved for appellate review.

In Point XIII, the Authority argues the circuit court erred in denying the Authority's motion for judgment notwithstanding the verdict because Gill failed to make a submissible case on its claim for lost profits in that Gill failed to present evidence of the fact of lost profits with reasonable certainty as required by Missouri law. The Authority has failed to preserve this point.

■ The Authority did not make the argument that Gill failed to present evidence of lost profits with reasonable certainty in either the motion for directed verdict or the motion for judgment notwithstanding the verdict. Therefore, Point XIII is not preserved for appellate review.

■ In Point XIV, the Authority argues the circuit court erred in not granting the Authority's motion for judgment notwithstanding the verdict on the claim for loss of productivity and additional costs because Gill failed to make a submissible case in that the only testimony establishing such damages was Gill's expert testimony which did not meet the standard for admission of expert testimony in Section 490.065 because it was unreliable and contained legal conclusions which invaded the province of the trial court. The Authority has failed to preserve this point.

Although the Authority argued in its motion for judgment notwithstanding the verdict that Gill's expert witness utilized improper materials that failed to provide any scientific or other basis for his opinion, the Authority did not raise the issue of expert witness reliability in the motion for directed verdict. Therefore, Point XIV is not preserved for appellate review.

### Plain Error

Because the Authority has failed to preserve Points II, III, IV, V, VI, VII, IX (A), XII, XIII, and XIV for appellate review, the only possible review of these alleged errors is plain error review. Rule 84.13(c) provides that:

> Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

■ Under plain error review, an appellate court "should first examine whether the claim of plain error is one that, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred." *State v. Rogers*, 51 S.W.3d 879, 880 (Mo.App. W.D.2001).[3] Once plain error is facially established, an appellate court should then review the claim "to determine whether manifest injustice or a miscarriage of justice actually occurred." *Id.* If a claim of plain error does not facially establish substantial grounds for believing manifest injustice or miscarriage of justice has occurred, an appellate court should decline to review for plain error. *Id.* "In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *Wilson v. Simmons*, 103 S.W.3d 211, 220 (Mo.App. W.D.2003).

■ Plain error review is seldom granted in civil cases and "may not be

---

3. The Rule of Civil Procedure regarding plain error and the Rule of Criminal Procedure regarding plain error are substantially similar such that cases construing one may be equally applicable to plain error review under the other. Rule 30.20. Rule 84.13.

invoked to cure the mere failure to make proper and timely objections." *Guess v. Escobar,* 26 S.W.3d 235, 241 (Mo.App. W.D.2000). The plain error rule " 'does not justify review of every alleged trial error that has not been properly preserved for appellate review.' " *Messina v. Prather,* 42 S.W.3d 753, 763 (Mo.App. W.D.2001) (quoting *State v. Valentine,* 646 S.W.2d 729, 731 (Mo.1983)). If an instruction is not objected to with specificity prior to submission of the case to the jury, a court is limited to reviewing the giving of an instruction for manifest injustice or a miscarriage of justice. *French v. Mo. Highway & Transp. Comm'n,* 908 S.W.2d 146, 150 (Mo.App. W.D.1995).

In *Noland v. State Farm Mutual Automobile Insurance,* 853 S.W.2d 327, 329 (Mo.App. W.D.1993), the plaintiff failed to preserve a motion for directed verdict for appellate review and made no attempt to excuse the failure to file a motion for judgment notwithstanding the verdict. *Noland* declined to waive the requirements for preservation of error in order to review the submissibility of the plaintiff's case, pointing out that review for plain error was out of the court's discretion. *Id.*

The Authority's four alleged instructional errors (Points II, III, VI, and VII) do not, on their face, establish substantial grounds for believing that manifest injustice or a miscarriage of justice has occurred. The Authority also makes no excuse for its failure to preserve the six alleged motion for directed verdict and motion for judgment notwithstanding the verdict errors that are not preserved (Points IV, V, IX (A), XII, XIII, and XIV), which we also find do not on their face establish the required standard for review. Because the Authority does not facially establish substantial grounds for believing that manifest injustice or miscarriage of justice has occurred, we decline to exercise

our discretion to review for plain error under Rule 84.13(c).

## Attorney's Fees

In Point VIII, the Authority argues the circuit court erred in awarding attorney's fees pursuant to the Prompt Pay Act because the award of interest under the Act was erroneous in that attorney's fees are only allowed if the award of interest is proper. In support of this argument, the Authority argues that there is no authority to award attorney's fees absent an award of interest under Section 34.057.6. The Authority also argues that if the award of interest is reversed, the award of attorney's fees must also be reversed. Because the award of interest under the Prompt Pay Act is affirmed, the award of attorney's fees is also affirmed.

## Conclusion

For the foregoing reasons, the judgment of the circuit court is affirmed.